No. 25-30739

_____

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

ARCHER WESTERN CONTRACTORS, LLC
*Plaintiff-Appellee*
v.
MCDONNEL GROUP, LLC
*Defendant-Appellant*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA,
CIVIL ACTION NO. 2:22-CV-05323-WBV-MBN,
HONORABLE WENDY B. VITTER PRESIDING

_____

**ORIGINAL BRIEF OF DEFENDANT-APPELLANT,
THE MCDONNEL GROUP, LLC**

_____

RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (No. 40063)
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Defendant-Appellant,
The McDonnel Group, LLC*

## CERTIFICATE OF INTERESTED PERSONS

Case No. 25-30739

_____

ARCHER WESTERN CONTRACTORS, LLC

v.

MCDONNEL GROUP, LLC

_____

The undersigned certify that the following listed persons and entities, as described in United States Court of Appeals for the Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.     **DEFENDANT-APPELLANT: The McDonnel Group, LLC**

The McDonnel Group, LLC ("TMG") is a Louisiana limited liability company organized, existing under the laws of, and maintaining its principal place of business within the State of Louisiana. The members of TMG are all natural persons who are citizens of Louisiana. The members of TMG are: TMG Investments, LLC; BAM Ventures, LLC; TVM Ventures, LLC; KIMMLE, LLC; Jason Zuckerman, Architect, LLC; LPKM Investments, LLC; Marse Consulting and Investments, LLC; and Meyer Consulting, LLC. The sole member of TMG Investments, LLC and BAM Ventures, LLC is Allan McDonnel, who is a citizen of Louisiana. The sole member of TVM

i

Ventures, LLC is Tony Montalbano, who is a citizen of Louisiana.  The sole member of KIMMLE, LLC is Kimberly Deckwa, who is a citizen of Louisiana.  The sole member of Jason Zuckerman, Architect, LLC is Jason Zuckerman, who is a citizen of Louisiana. The sole member of LPKM Investments, LLC is Lori Moser, who is a citizen of Louisiana. The sole member of Marse Consulting and Investments, LLC is Steven Marse, who is a citizen of Louisiana. Thus, TMG is a citizen of Louisiana. The sole member of Meyer Consulting, LLC is Megan Meyer, who is a citizen of Louisiana.

2.    **COUNSEL FOR DEFENDANT-APPELLANT: The McDonnel Group, LLC**

Counsel for Defendant-Appellant, The McDonnel Group, LLC, are:

RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (No. 40063)
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

3.    **PLAINTIFF-APPELLEE: Archer Western Contractors, LLC**

Archer Western Contractors, LLC ("AWC") is a limited liability company organized and existing under the laws of the State of Delaware, maintaining its principal place of business in the State of Illinois.  AWC has three (3) members: the Walsh Group, Ltd., Matthew M. Walsh, III, and Daniel J. Walsh.  Matthew Walsh, III

and Daniel Walsh are each natural persons and citizens of the State of Illinois.  The Walsh Group, Ltd. is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois.  Thus, AWC is a citizen of Illinois.

4.     **<u>COUNSEL FOR PLAINTIFF-APPELLEE: Archer Western Contractors, LLC</u>**

Counsel for Plaintiff-Appellee, Archer Western Contractors, LLC, in the District Court or on this appeal are:

DANIEL S. LUND III (No. 19014)
JEREMY T. GRABILL
    (No. 34924)
PATRICK M. JUDD (No. 40415)
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile:  (504) 568-9130

CARTER B. REID
    (Va. Bar No. 27192) *Pro Hac Vice*
DOMINICK P. WEINKAM
    (Va. Bar No. 92595) *Pro Hac Vice*
HENRY O. TAYLOR, IV
    (Va. Bar No. 97251) *Pro Hac Vice*
WATT, TIEDER, HOFFAR
        & FITZGERALD, LLP
1765 Greensboro Station Place
Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000

Dated: April 20, 2026

*Andre M. Stolier*
_____
*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*

iii

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendant–Appellant, The McDonnel Group, LLC ("TMG"), respectfully submits that oral argument will assist the Court in this appeal, which raises substantive errors. Specifically, the district court erred in denying TMG attorneys' fees by misinterpreting the contractual agreement entered into by TMG and Archer Western Contractors, LLC ("AWC"), where the plain language of the agreement and the parties' shared intent support an award of attorneys' fees to TMG. Oral argument will assist the Court in evaluating the misapplication of Louisiana contract law and the parties' common intent.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** _____ i

**STATEMENT REGARDING ORAL ARGUMENT** _____ iv

**TABLE OF CONTENTS** _____ v

**TABLE OF AUTHORITIES** _____ vi

**JURISDICTIONAL STATEMENT** _____ 1

**STATEMENT OF THE ISSUES** _____ 1

**STATEMENT OF THE CASE** _____ 1

**SUMMARY OF THE ARGUMENT** _____ 4

**LAW & ARGUMENT** _____ 7

   **I.   Standard of Review** _____ 7

   **II.   The District Court Erred in Denying TMG's Motion for Attorneys' Fees.** _____ 9

     A.  The Plain Language of Article 15(e) Entitles TMG to Fees Because it Properly Put AWC in Default and Successfully Defended Against its Claims.  9

     B.  Alternatively, the District Court Effectively Determined that AWC was a Defaulting Party in Breach of the JV Agreement Without the Necessity of an Affirmative Breach Claim by TMG. _____ 15

     C.  Requiring a Separate Judicial Determination of Breach Renders the Fee-Shifting Provision of Article 15(e) of the JV Agreement Meaningless. _____ 21

**CONCLUSION** _____ 23

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS** _____ 25

**CERTIFICATE OF SERVICE** _____ 26

# TABLE OF AUTHORITIES

**CASES**

*Cable Marine, Inc. v M/V Trust Me II*, 632 F.2d 1344 (5th Cir. 1980)..................7, 8

*Cimarex Energy Co. v. Chastant*, 537 F. App'x 561 (5th Cir. 2013)........................9

*Dresser-Rand Co. v. Nat'l Lab. Rels. Bd.*, 838 F.3d 512 (5th Cir. 2016)...................8

*Energy Management Corp. v. City of Shreveport,* 467 F.3d 471 (5th Cir. 2006) .....8

*FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843 (La. App. 4 Cir. 2/21/18), 241 So. 3d 372...................................................................................18

*French v. Allstate Indem. Co.*, 637 F.3d 571 (5th Cir. 2011) ...................................10

*Godchaux v. Chicago Lumber & Coal Co.*, 59 So. 34 (La. 1912)............................17

*Hassinger v. JP Morgan Chase & Co.*, 394 F. App'x 63 (5th Cir. 2010) ................10

*Heirs of Boudreaux v. Payne*, 773 So.2d 894 (La. App. 3 Cir. 2/6/00) )................17

*Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649 (5th Cir. 1989) .............................18

*In re Hari Aum, LLC*, 714 F.3d 274 (5th Cir. 2013)................................................9

*McDonald's Corp. v. Watson*, 69 F.3d 36 (5th Cir. 1995)....................................7, 8

*Penthol, L.L.C. v. Vertex Energy Operating, L.L.C.*, 149 F.4th 504 (5th Cir. 2025)..................................................................................17

*Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515 (5th Cir. 2007).......8, 21

*Volk v. Gonzales,* 262 F.3d 528 (5th Cir. 2001).........................................................8

*Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239 (5th Cir. 2018)........................17

**STATUTES**

Fed. R. Civ. P. 58(a)(3) ...............................................................................................1

28 U.S.C. § 1291 ..........................................................................................................1

28 U.S.C. § 1332 ..........................................................................................................1

Louisiana Civil Code Article 1983 ..........................................................................9, 10

Louisiana Civil Code Article 1991 .........................................................................11, 19

Louisiana Civil Code Article 2045 ...............................................................................9

Louisiana Civil Code Article 2046 .............................................................................10

Louisiana Civil Code Article 2049 .............................................................................22

Louisiana Civil Code Article 2050 .............................................................................19

**OTHER SOURCES**

DELAY, DEFAULT, FAULT, BREACH AND THE MEANING OF WORDS, 6
LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 1.15 (2d. ed.) ....................17

Black's Law Dictionary 200 (8th ed. 2004) .........................................................18

Black's Law Dictionary 201 (8th ed. 2004) .........................................................18

## JURISDICTIONAL STATEMENT

The district court ruled that it had jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because it is the appeal from a final decision of the district court under Fed. R. Civ. P. 58(a)(3).

## STATEMENT OF THE ISSUES

1.      Whether the district court abused its discretion in denying TMG's Motion for Attorneys' Fees.

2.      Whether the district court erred as a matter of law and contractual interpretation when it found that the Joint Venture Agreement requires a judicial determination of breach as a condition precedent for such an award.

## STATEMENT OF THE CASE

This appeal arises from the district court's denial of attorneys' fees to The McDonnel Group, LLC ("TMG"). Substantial litigation has ensued in this matter primarily from issues that arose from the joint venture agreement ("JV Agreement") that TMG and Archer Western Contractors, LLC ("AWC") entered into to obtain and perform a contract for the Law Enforcement Division of the Parish of Orleans, State of Louisiana.[1] The district court afforded dispositive relief to both TMG and AWC insofar as the court: (1) granted TMG's Motion for Partial Summary Judgment, finding that AWC could not recover from TMG, under the loan provisions of the JV

---

[1] ROA.4995-5016.

Agreement, monies that AWC paid to the JV under the guise of capital contributions;[2] (2) granted AWC's Motion for Partial Summary Judgment, finding that TMG had breached the JV Agreement relating to $2.7 million in settlement funds;[3] and (3) denied subsequent Motions for Summary Judgment filed by both TMG and AWC.[4]

The case continued to a jury trial. Both TMG and AWC identified entitlement to attorneys' fees as a contested issue of law in their pretrial order.[5] Moreover, both parties agreed at the pretrial conference that entitlement to attorneys' fees did not require a fact determination by the jury such that it could be resolved by the district court through post-verdict motions.[6] The jury returned a verdict in favor of TMG as to all claims presented at trial.[7] Thereafter, the district court issued a final judgment ordering TMG to pay to the joint venture account the $2.7 million in settlement funds with delay damages.[8] The district court then issued a judgment in favor of TMG as to the remainder of AWC's claims.[9]

This appeal concerns the denial of TMG's Motion for Attorneys' Fees.[10]

---

[2] ROA.2179-2200.
[3] ROA.2321-2358.
[4] ROA.3389-3412.
[5] ROA.3337.
[6] Such as this motion on appeal.
[7] ROA.3666-3669.
[8] ROA.3696. Separate appeals are pending under docket No. 25-30321 c/w 25-30479.
[9] ROA.3696-3697.
[10] ROA.4204-4211.

Although the district court awarded AWC fees[11]—far more than TMG sought in its own motion[12]—for prevailing on its motion for summary judgment, the court denied TMG's motion.[13]

TMG's Motion for Attorneys' Fees was filed pursuant to Articles 15(c) and 15(e) of the JV Agreement, which govern when a party becomes the "Defaulting Party" and when the "Non-Defaulting Party" is entitled to attorneys' fees.[14] Article 15(c) of the JV Agreement sets forth how a party becomes a "Defaulting Party":

> If any party hereto (the "Defaulting Party") shall default in any of its obligations under this Agreement [...], then the other party (the "Non-Defaulting Party") may give written notice to the Defaulting Party specifying the event of the default. In the event that the Defaulting Party does not cure its default within seven (7) days after receipt of such notice, then the Non-Defaulting Party *may* terminate the Defaulting Party's interest in the Joint Venture.[15]

Article 15(e) of the JV Agreement provides when attorneys' fees are warranted:

> Any Defaulting Party hereunder shall indemnify and hold harmless the Non-Defaulting Party for any loss, claims or liabilities which the Non-Defaulting Party may incur arising out of any breach of this Joint Venture Agreement by the Defaulting Party. The Defaulting Party further agrees to pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach,

---

[11] *See* ROA.3714 (seeking award to AWC of fees totaling $769,133.13); ROA.4142 (awarding AWC $517,717.95 in fees and costs).

[12] *See* ROA.3900 (seeking award to TMG of fees totaling $412,735.00).

[13] *See* ROA.4211 (adopting Magistrate Judge's Report and Recommendation denying TMG's Motion for Attorneys' Fees).

[14] ROA.5010-5011 (emphasis added).

[15] ROA.5010.

including court costs and disbursements and fees on a solicitor and his own client basis.[16]

AWC opposed TMG's Motion,[17] to which TMG timely replied.[18]

On August 18, 2025, the Magistrate Judge issued his Report and Recommendation on TMG's Motion for Attorneys' Fees.[19] TMG timely filed its objections.[20] On November 17, 2025, the district court adopted the Magistrate Judge's Report and Recommendation, denying TMG attorneys' fees.[21] In its ruling, the district court emphasized that TMG procedurally preserved the issue of attorneys' fees for adjudication after the trial by jury.[22] On December 15, 2025, TMG filed its Notice of Appeal.[23] Now, TMG timely files this brief.

## SUMMARY OF THE ARGUMENT

This appeal follows directly from the district court's interpretation of the JV Agreement when it granted summary judgment in TMG's favor on AWC's breach-of-contract claim—a ruling later supplemented by the jury's verdict—yet denied TMG fees incurred to "***defend [an] action*** arising out of [AWC's] breach." In granting TMG's summary judgment, the court necessarily determined that TMG's

---

[16] ROA.5011.
[17] ROA.3981-3992.
[18] ROA.4062-4071.
[19] ROA.4143-4148.
[20] ROA.4180-4191.
[21] ROA.4211.
[22] ROA.4207-4208.
[23] ROA.4212.

notice of default to AWC properly placed AWC in default in accordance with the parties' agreement, and that AWC failed to cure that default. Those inescapable conclusions cannot be reconciled with the district court's decision to deny TMG fees sought under the JV Agreement's provision requiring such an award when either party is forced to "defend" an action arising out of the Defaulting Party's breach.

The rulings below in favor of TMG rejected AWC's claims for capital contributions, finding that AWC's demands for capital contributions were themselves in violation of the JV Agreement. Thus, alternatively, the court's ruling in TMG's favor on its summary judgment and the jury's subsequent verdict necessarily require finding that AWC breached the Agreement by unilaterally determining capital contributions. Rejecting AWC's contrary position on summary judgment, the district court held that "[AWC's] own determination of the need for working capital is simply a necessary but not sufficient condition for the parties to be obligated to contribute capital." Combined, TMG's two-fold victory on AWC's claim—first on summary judgment and second after a full jury trial—establish the crucial and undisputed premise requiring reversal: AWC demanded capital contributions contrary to the Agreement; TMG noticed AWC's default; AWC sued to enforce its demands; and TMG successfully defended that action arising out of the Defaulting Party's breach.

The plain language of Article 15(e) of the JV Agreement is dispositive: a

Defaulting Party must pay the legal expenses incurred by the Non-Defaulting Party to "protect their interests *or **<u>defend</u>** **any action arising out of the Defaulting Party's breach.**" Accordingly, the ruling and verdict below in favor of TMG supplied the very element the district court later deemed absent—judicial confirmation that AWC acted contrary to the Agreement.

The district court expressly found that "[t]he parties do not dispute that the Executive Committee did not approve any of AWC's working capital determinations from mid-2015 onwards," and therefore "AWC's determinations themselves are not binding upon TMG given the lack of unanimous Executive Committee approval." Those holdings necessarily establish that AWC demanded capital contributions in violation of the Agreement's approval requirements. TMG's fees for successfully defending AWC's claims are thus squarely within the language of Article 15(e)— legal expenses to "defend" an action caused by a "Defaulting Party's breach."

Yet the court denied TMG the modest fees it sought for defending AWC's claims—twice—while awarding AWC $517,717.95 in fees on its own summary judgment motion. The contradiction is stark: TMG prevailed on the same breach of contract theory on which AWC lost, yet TMG was denied fees under the same Article 15(e) provision that entitled AWC to recover its own fees. The court reasoned that Article 15(e) required a separate judicial determination of AWC's breach before fees could be awarded, despite the denial of AWC's breach claim, the contractual

6

language authorizing reimbursement for "defend[ing]" claims, and the absence of any requirement to prevail on an affirmative claim.

That interpretation is incorrect and the resulting injustice is manifest. Under Article 15(c), a party that defaults and fails to cure after written notice is a "Defaulting Party." Article 15(e) requires that party to "pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach." Nothing in the Agreement requires a judicial declaration of breach before fees may be recovered.

The district court's contrary reading renders meaningless the provision allowing recovery of fees incurred to "defend" claims. If a party had to prevail on an affirmative breach claim to recover fees, the contractual language authorizing recovery for defending claims would serve no purpose. Louisiana law forbids interpretations that render contractual language ineffective.

The district court's interpretation of the JV Agreement is therefore legal error, and its denial of TMG's fee motion—once that error is corrected—cannot stand.

## LAW & ARGUMENT

### I.　Standard of Review

This Court reviews a district court's "denial of attorneys' fees provided by contract for abuse of discretion." *McDonald's Corp. v. Watson*, 69 F.3d 36, 37 (5th Cir. 1995) (citing *Cable Marine, Inc. v M/V Trust Me II*, 632 F.2d 1344, 1345 (5th

7

Cir. 1980)). Crucially, however, the district court has far less discretion to deny an award when, as here, the contract provides for attorneys' fees. *Cable Marine, Inc.*, 632 F.2d at 1345 (5th Cir. 1980) ("Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees that it has when applying a statute allowing for a discretionary award.").

Thus, while "[a] district court abuses its discretion if it awards contractually-authorized attorneys' fees under circumstances that make the award inequitable or unreasonable," it likewise abuses its discretion where it "fails to award such fees in a situation where inequity will *not* result." *McDonald's Corp.,* 69 F.3d at 46-7 (emphasis added).

Crucially to this appeal, "conclusions of law underlying the award are reviewed de novo." *Energy Management Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) (citing *Volk v. Gonzales*, 262 F.3d 528, 534 (5th Cir. 2001)); *see also Dresser-Rand Co. v. Nat'l Lab. Rels. Bd.*, 838 F.3d 512, 516 (5th Cir. 2016) ("Legal questions, such as questions of contractual interpretation, are reviewed de novo.") (citing *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 518 (5th Cir. 2007). Here, the district court made no determination that awarding fees to TMG would be inequitable. Because its denial of TMG's motion rested entirely on an erroneous interpretation of the contractual conditions governing fee entitlement—a legal question this Court reviews *de novo*—this Court should reverse and hold that

8

TMG is entitled to recover its fees.

## II.    The District Court Erred in Denying TMG's Motion for Attorneys' Fees.

The district court's denial of TMG's motion misinterprets the plain language of the JV Agreement and contradicts the law of the parties through their common intent.

This Court should reverse for three reasons, whether independently or combined. First, the plain language of Article 15(e) does not require a judicial determination of breach on an affirmative claim for fees to be awarded—the contract's own default and notice mechanism suffices. Second, and in the alternative to the extent necessary, even if a judicial determination were required, the summary judgment ruling and jury verdict conclusively established AWC's breach. Third, the district court's interpretation renders the bi-lateral fee-shifting provision meaningless, in violation of fundamental principles of Louisiana contract law.

### A.    The Plain Language of Article 15(e) Entitles TMG to Fees Because it Properly Put AWC in Default and Successfully Defended Against its Claims.

Under Louisiana law, "[c]ontracts have the effect of law for the parties…." La. Civ. Code art. 1983; *see also* La. Civ. Code art. 2045 ("Interpretation of a contract is the determination of the common intent of the parties.").[24] Absent a

---

[24] This Court routinely applies this principle. *See, e.g.*, *Cimarex Energy Co. v. Chastant*, 537 F. App'x 561, 564 (5th Cir. 2013) (citation omitted) (stating that the mineral "lease contract is the law between the parties, defining their respective legal rights and obligations"); *In re Hari Aum,*

provision contrary to mandatory law or public policy, the JV Agreement must be enforced as written, and TMG should be entitled to recover fees for being forced to—successfully—"***defend*** [an] action arising out of [AWC's] breach." Here, that enforcement was frustrated by a fundamental misinterpretation of the agreement's fee-shifting provision, which produced an inequitable result: the district court awarded AWC fees for prevailing on one breach-of-contract claim at summary judgment, yet denied TMG fees for prevailing on another breach claim—first on summary judgment and ultimately through the jury's verdict.[25]

The JV Agreement provides the framework of when the Non-Defaulting Party—TMG—is entitled to attorneys' fees. First, Article 15(c) of the JV Agreement specifies when a party becomes a "Defaulting Party":

> If any party hereto (the "Defaulting Party") shall default in any of its obligations under this Agreement [...], then the other party (the "Non-Defaulting Party") may give written notice to the Defaulting Party specifying the event of the default. In the event that the Defaulting Party does not cure its default within seven (7) days after receipt of such notice, then the Non-Defaulting Party may terminate the

---

*LLC*, 714 F.3d 274, 287 (5th Cir. 2013) (citing La. Civ. Code art. 1983)("contracts have the effect of law between the parties and courts enforce them according to the true intent of the parties"); *French v. Allstate Indem. Co.*, 637 F.3d 571, 576-77 (5th Cir. 2011) (citing La. Civ. Code art. 1983) (stating that an insurance policy in Louisiana constitutes the law between the insured and the insurer); *Hassinger v. JP Morgan Chase & Co.*, 394 F. App'x 63, 65 (5th Cir. 2010) (quoting La. Civ. Code art. 1983 and La. Civ. Code art. 2046) (explaining that contracts have the effect of law between the parties, and the interpretation of the contract should be based on the common intent of the parties).

[25] *See* ROA.4142 (awarding AWC $517,717.95 in fees and costs); ROA.4211 (denying TMG's Motion for Attorneys' Fees).

Defaulting Party's interest in the Joint Venture.[26]

This provision is consistent with Louisiana Civil Code Article 1991, which permits an obligee to put an obligor in default by written request of performance.[27] Article 15(c) specifies how the Non-Defaulting Party puts the Defaulting Party in default and how long the Defaulting Party has to cure such default; there is no dispute that TMG properly placed AWC in default or that AWC filed suit on a twice-defeated claim rather than cure it.

Article 15(e) then provides the consequences of that default:

> ***Any*** Defaulting Party hereunder shall indemnify and hold harmless the Non-Defaulting Party for any loss, claims or liabilities which the Non-Defaulting Party may incur arising out of any breach of this Joint Venture Agreement by the Defaulting Party. The Defaulting Party further agrees to **pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or <u>defend any action</u> arising out of the Defaulting Party's breach**, including court costs and disbursements and fees on a solicitor and his own client basis.[28]

AWC is, by definition, a Defaulting Party. On multiple occasions, AWC demanded capital contributions without complying with the JV Agreement's requirement of unanimous Executive Committee approval, and then filed suit on such demands

---

[26] ROA.5010.

[27] "An obligee may put the obligor in default by a written request of performance, or by an oral request of performance made before two witnesses, or by filing suit for performance, or by a specific provision of the contract." La. Civ. Code art. 1991.

[28] ROA.5011 (emphasis added).

11

resulting in claims that required TMG to incur "legal expenses" to "defend [an] action arising out of [AWC's] breach," which was properly noticed.[29] Although AWC was given the opportunity to cure the default, it declined to do so and persisted in the very conduct identified in TMG's notice of default—demanding capital contributions not required under the JV Agreement.

TMG did not need to seek a judicial determination of AWC's "breach" merely because AWC demanded capital contributions. Such a determination would become necessary only once AWC filed suit, which it did. At that point, there was no need for TMG to file a counterclaim to assert its own duplicative breach claim, as any ruling in its favor on AWC's claim would necessarily resolve the same issue: if AWC was in breach, TMG would defeat AWC's claim; if TMG was in breach, AWC would have prevailed.

Confirmation that AWC was properly placed in default and failed to cure it is not only evident from the summary judgment ruling and jury verdict in TMG's favor, but also through the lens of AWC's own president, Michael Whelan.[30] Although Article 7(a) mandates that capital contributions *must* be approved by the Executive Committee by a unanimous vote, Mr. Whalen testified at trial that AWC never obtained such approval before demanding capital contributions, and his

---

[29] ROA.3934-3942 (the unilateral action by AWC of attempting to make unauthorized capital contribution calls is a breach of the JV Agreement).
[30] ROA.4309.

admitting under cross-examination that AWC's contrary interpretation of the agreement was wrong breached that requirement and deprived TMG of its rights under the JV Agreement.[31] AWC's attempt to circumvent the voting provisions of the JV Agreement, and Mr. Whelan's confession under cross-examination that it was wrong to do so, conclusively establish that AWC was properly placed in default, failed to correct its default, and thus constituted a Defaulting Party, and that TMG is entitled to recover its fees incurred to "**defend**" AWC's claim.

It should not be lost on this Honorable Court that AWC, itself, agrees that Articles 15(c) and 15(e) mandate such a result. In its own motion for attorneys' fees, AWC argued:

> Under JVA Article 15(c), a Party's default "in any of its obligations under [the JVA]" followed by a notice and failure to cure, establishes that Party as a Defaulting Party. The JVA establishes consequences for a Defaulting Party. Most relevant here, JVA Article 15(e) provides, in part, that "[t]he Defaulting Party further agrees to pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach, including court costs and disbursements and fees on a solicitor and his own client basis." The attorneys' fees incurred in this action are "legal expenses required of or by the Non- Defaulting Party [AWC] to protect their interests."
>
> Articles 15(c) and 15(e) are unambiguous and must be given their plain effect. *Beau Box Com. Real Est., L.L.C. v. Pennywise Sols., Inc.*, 2019-0114 (La. App. 1 Cir. 10/23/19), 289 So. 3d 600, 605 (enforcing contractual

---

[31] ROA.4442; *id.* at ROA.4455-4456.

provision that provided that "the <u>defaulting party</u> shall be liable for all attorney's fees and other costs incurred in the enforcement of any and all rights under the purchase agreement.") (emphasis added); *M.A. Allen, Inc. v. Johnson*, 2003-0671 (La. App. 1 Cir. 5/14/04), 879 So. 2d 746, 752, writ denied, 2004-1452 (La. 9/29/04), 883 So. 2d 986 (awarding fees after finding breach where "the Agreement provides that <u>in the event of a default</u>, the defaulting party will be liable for all attorney fees incurred in the enforcement of any and all rights under the agreement.") (emphasis added).[32]

Hence, under the very arguments AWC presented to the court below in support of its request for fees, which the court granted, it is clear that *both* parties viewed this language as clearly and unambiguously requiring an award of attorneys' fees in the precise circumstances now before this Court.

The JV Agreement expressly provides for the recovery of attorneys' fees by the Non-Defaulting Party in "defend[ing]" claims, and both TMG and AWC have advanced that same construction of the JV Agreement. The parties' shared interpretation of this clear and unambiguous language precludes any contrary construction. Therefore, this Court should reverse the holding below and find that, pursuant to the JV Agreement, TMG is a Non-Defaulting Party entitled to attorneys' fees from the Defaulting Party—AWC.

---

[32] ROA.2611.

**B.    Alternatively, the District Court Effectively Determined that AWC was a Defaulting Party in Breach of the JV Agreement Without the Necessity of an Affirmative Breach Claim by TMG.**

The plain language of Article 15(e) requires no judicial determination of breach on an affirmative claim as a predicate to award fees. Under the JV Agreement, a party is a Defaulting Party when it defaults on an obligation and subsequently fails to cure the default after receiving written notice.[33] No more, no less. However, the district court erroneously interposed that provision with a requirement for a judicial determination of breach on an *affirmative* claim as a necessary predicate to an award of fees.[34] There is no such requirement.

The district court reasoned that "default" and "breach" are distinct concepts, explaining: "Breach, however, is not synonymous with 'default.'"[35] However, the JV Agreement's provision is two-fold, and a proper analysis makes clear that it requires an award of fees both for prosecuting and, in the words of the JV Agreement itself, "defend[ing]" claims. Specifically, the first sentence of Article 15(e) speaks to prevailing party fees for a breach claim.[36] Under the second sentence, at issue here, a Defaulting Party must pay a Non-Defaulting Party legal fees and expenses incurred to "defend any action arising out of the Defaulting Party's breach.'"[37] Here, the

---

[33] ROA.5010.

[34] ROA.4208 ("Because there was no judicial determination that AWC breached the Joint Venture Agreement, the award of attorneys' fees to TMG is impermissible.").

[35] ROA.4209.

[36] ROA.5011.

[37] *Id.*

15

district court erred in finding that, under the second provision, TMG must prevail on an affirmative "breach" as "a claim that must be brought before a court, which would then adjudicate the claim of breach,"[38] as opposed to prevailing in "***defend[ing]***" a claim, as the JV Agreement provides—even though TMG's victory below necessarily established AWC's breach.

Indeed, TMG *did prevail*, and in precisely the circumstances that the second sentence of Article 15(e) contemplates. AWC demanded capital contributions without authority and, in response to TMG's notice of default that such amounted to a breach, AWC itself filed suit for breach of contract. Again, once AWC's claim was brought, a ruling on that particular breach claim in its favor would necessarily mean that TMG was in breach, just as a ruling against that claim would necessarily mean that AWC was in breach. The plain language of the contract clearly contemplates that a Non-Defaulting Party is entitled to fees in the latter circumstance— "defend[ing] any action arising out of the Defaulting Party's breach."[39]

The district court's error stems from the incorrect conclusion that the terms "default" and "breach" in the context of the JV Agreement warranted distinct treatment. Specifically, reasoning that a party can only be a "Defaulting Party" if explicitly held so; even where, as here, the rulings below denying AWC's claim on

---

[38] ROA.4209.
[39] ROA.5011.

capital contributions logically hinged on a finding that such demands were, themselves, a breach—and in precisely the manner of TMG's notice of default.

The district court's analysis improperly separates concepts that converge in cases of "absolute" default, where "default of an obligation" and "breach of a contract" become indistinguishable.[40] As this Court explained in *Penthol, L.L.C. v. Vertex Energy Operating, L.L.C.*, "treating 'default' and 'failure of a Party to perform any material covenant or obligation' as synonyms is also consistent with the plain meaning of the term."[41] Thus, as a matter of law and contractual interpretation, the district court erred in failing to recognize that a judicial determination of breach on an affirmative claim is not required for an award of fees pursuant to the JV Agreement, just as much as it erred in failing to recognize that the rulings against AWC's breach of contract claim constitute clear judicial determinations that AWC breached the JV Agreement. TMG incurred fees to "defend" a claim brought by AWC, which arose from AWC's breach, as judicially confirmed by the rulings

---

[40] *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 242, n.1 (5th Cir. 2018) (explaining that a party who is in "default" of a contract cannot pursue its own claims for another party's "breach" of that contract); *see also Godchaux v. Chicago Lumber & Coal Co.*, 59 So. 33, 34 (La. 1912) ("It is well settled that a party cannot claim damages for the non-performance of a contract as to which he himself is in default"); § 1.15. DELAY, DEFAULT, FAULT, BREACH AND THE MEANING OF WORDS, 6 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 1.15 (2d ed.) (explaining the interplay between "breach" and "default").

[41] *Penthol, L.L.C. v. Vertex Energy Operating, L.L.C.*, 149 F.4th 504, 515 (5th Cir. 2025) (applying Texas law but interpreting the same words); *see also Heirs of Boudreaux v. Payne*, 773 So. 2d 894, 898 (La. App. 3 Cir. 12/6/00) ("The Court went on to say, 'what a default to me means is something that you must do. And, failure to do that would be a breach of an agreement.' We agree.").

below—any contrary conclusion is wholly detached from the very definition of the word "breach" in the context of contracts.[42]

Moreover, if a separate judicial determination of breach was required before a party could seek attorneys' fees, TMG and AWC would not have identified entitlement to attorneys' fees as a contested issue of law in their pretrial order,[43] and TMG and AWC would not have agreed at the pretrial conference that either party's entitlement to attorneys' fees did not require any particular fact determination by the jury such that it could be resolved by the district court through post-verdict motions.[44] Such agreement supports the notion that both parties shared a common intent to rely on Article 15(e) of the JV Agreement in the precise situation before this Court—i.e., to obtain reimbursement of fees incurred in "defend[ing] any action arising out of the Defaulting Party's breach."[45] The district court abused its discretion by placing inordinate and erroneous emphasis on the distinction between default and breach in accordance with the terms of the JV Agreement and requiring a judicial determination of breach before an award of attorneys' fees can be made.

---

[42] *See Breach of Contract*, BLACK'S LAW DICTIONARY 200 (8th ed. 2004) ("Violation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance."); *Passive Breach of Contract*, BLACK'S LAW DICTIONARY 201 (8th ed. 2004) ("A failure to perform the requirements of a contract."); *see also Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 655 (5th Cir. 1989) ("Generally, where a person neglects to do what he is obligated under a contract, he has committed a passive breach of the contract."); *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843 (La. App. 4 Cir. 2/21/18), 241 So. 3d 372, 389 (same).
[43] ROA.3337.
[44] ROA.3899-3901 (the motion that is subject to this Appeal).
[45] ROA.5011.

The entitlement to fees under Article 15(e) does not turn on whether the other party "prevails" on its *own* breach of contract, rather, it turns on whether one party's breach caused the other to incur fees.[46] "[A]n obligee may put the obligor in default by a written request of performance, or by an oral request of performance made before two witnesses, or by filing suit for performance, or by a specific provision of the contract."[47] In this case, TMG gave AWC numerous written notices putting it in default, satisfying the requirements of this article, and indisputably rendering AWC a Defaulting Party under Article 15(c).[48]

Louisiana law mandates that "each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[49] Here, the JV Agreement does not have a *single provision* supporting the district court's finding that a party properly placed in default is only a Defaulting Party if it prevails on an affirmative claim for breach.[50] The JV Agreement is clear and unambiguous: both TMG's and AWC's common intent requires awarding the Non-Defaulting Party its attorneys' fees it incurred to "defend" claims arising out of a breach. Here, AWC's breach claim was itself a continuation of the very breach for which TMG placed AWC in default—capital contributions it

---

[46] ROA.5010-5011.
[47] La. Civ. Code art. 1991.
[48] ROA.3934-3942 (the unilateral action by AWC of attempting to make unauthorized capital contribution calls is a breach of the JV Agreement).
[49] La. Civ. Code art. 2050.
[50] ROA.5010-5011 (emphasis added).

incorrectly asserted TMG must pay. Because those claims were rejected, not once but twice, the court erred.

Article 15(e) contemplates the precise scenario before this Court—the Non-Defaulting Party does not file an affirmative claim and merely defends itself against the Defaulting Party's claim "arising out of the Defaulting Party's breach."[51] Here, AWC—the Defaulting Party—filed a breach of contract claim against TMG. Specifically, AWC sought capital contributions not required by the JV Agreement, and TMG sent multiple written notices of default to AWC regarding the capital contributions.[52] The district court dismissed AWC's claims on its "loan" theory of recovery on summary judgment and under any other remaining theories of recovery pursuant to the jury's verdict, necessarily meaning AWC had been properly put in default for those same acts by TMG years prior.[53]

AWC—the Defaulting Party—breached the contract by seeking capital contributions not required under the JV Agreement. Because AWC initiated this action, TMG was compelled to defend itself against claims arising from that breach. But it does not follow that TMG was required to assert an independent breach claim based on the same theory that would necessarily be resolved in defending against

---

[51] *Id.*
[52] ROA.3934-3942 (the unilateral action by AWC of attempting to make unauthorized capital contribution calls is a breach of the JV Agreement).
[53] ROA.3389-3412.

20

AWC's claim. Put simply, all roads lead to Rome, because the outcome is the same either way: a ruling rejecting AWC's breach claim is substantively identical to the ruling that would have resulted had TMG asserted its own breach claim based on the default it had already properly noticed.

Applying Article 15(e) to the facts of this case, there is only one conclusion: TMG is entitled to attorneys' fees without the need for a separate judicial determination of breach for the fees incurred "defend[ing] any action arising out of the Defaulting Party's [AWC's] breach."[54]

### C. Requiring a Separate Judicial Determination of Breach Renders the Fee-Shifting Provision of Article 15(e) of the JV Agreement Meaningless.

The district court's assertion that "allowing a party to collect attorneys' fees for a breach of contract without a judicial determination of a breach 'would mean either party could unilaterally declare the contract breached' and thus collect fees based on that unilateral declaration" is erroneous.[55] This assertion goes directly to contractual interpretation, which this Court reviews *de novo*, without deference to the ruling below.[56] The district court's conclusion here is incorrect for two reasons.

First, the district court's holding rests on the erroneous premise that attorneys' fees cannot be awarded absent a judicial declaration of breach. The JV Agreement

---

[54] ROA. 5011.
[55] ROA.4210.
[56] *Strand Theatre of Shreveport Corp.*, 493 F.3d at 518.

imposes no such requirement. Instead, it provides that a party becomes a Defaulting Party when it receives written notice of its default from the Non-Defaulting Party and fails to cure that default within the time permitted. That is precisely what occurred here. TMG issued multiple written notices placing AWC in default, and AWC failed to cure that default.[57]

Second, the district court's requirement of a judicial determination of an affirmative breach claim would render the second sentence of Article 15(e) of the JV Agreement ineffective. "A provision [of a contract] susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[58] Article 15(e) provides that "[t]he Defaulting Party further agrees to pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach."[59]

The plain language of Article 15(e) contemplates precisely the situation here: a Non-Defaulting Party defending an action "arising out of the Defaulting Party's breach."[60] Article 15(c) defines when a party becomes a Defaulting Party and does not require the Non-Defaulting Party to assert its own breach claim.[61] The district court's interpretation—requiring a judicial finding of breach on an affirmative

---

[57] ROA.3934-3942 (the unilateral action by AWC of attempting to make unauthorized capital contribution calls is a breach of the JV Agreement).
[58] Louisiana Civil Code Article 2049.
[59] ROA.5011.
[60] *Id.*
[61] ROA.5010.

22

claim—therefore nullifies the second part of the fee-shifting provision by eliminating recovery for defending the very claims it covers.

In sum, the district court's denial of TMG's Motion for Attorneys' Fees rests on a misinterpretation of the JV Agreement and misapplication of Louisiana law. TMG unquestionably satisfied the plain language requirement to "defend any action arising out of the Defaulting Party's breach," yet the court denied TMG fees while awarding AWC $517,717.95 under the identical contractual provision—a manifest inconsistency and error. This Court should reverse and hold that the district court abused its discretion in denying TMG attorneys' fees.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant, the McDonnel Group, LLC, respectfully requests that this Honorable Court reverse the district court's order denying its Motion for Attorneys' Fees and remand the matter for a determination of the quantum of an award to TMG of recoverable attorneys' fees under the parties' Joint Venture Agreement, consistent with Louisiana law.

Respectfully submitted:

*Andre M. Stolier*
_____
RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (No. 40063)
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*

# <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS</u>

I HEREBY CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 27(d)(2)(A), because it contains 5609 words, excluding the parts of the filing exempted by FED. R. APP. P. 32(f).  This brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6), because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 20, 2026

*Andre M. Stolier*
_____

*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 20, 2026, Defendant-Appellant, The McDonnel Group, LLC, caused the foregoing Original Brief of Defendant-Appellant, The McDonnel Group, LLC, to be served on the following counsel of record for Plaintiff-Appellee, Archer Western Contractors, LLC, by electronically filing the same with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system, or by first class mail:

By CM/ECF:

DANIEL S. LUND III (No. 19014)
JEREMY T. GRABILL (No. 34924)
PATRICK M. JUDD (No. 40415)
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile:  (504) 568-9130

By First Class Mail:

CARTER B. REID
   *Admitted Pro Hac Vice*
DOMINICK P. WEINKAM
   *Admitted Pro Hac Vice*
HENRY O. TAYLOR, IV
   *Admitted Pro Hac Vice*
WATT, TIEDER, HOFFAR &
FITZGERALD, LLP
1765 Greensboro Station Place,
Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000

Dated: April 20, 2026

*Andre M. Stolier*
_____
*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*