CASE NO. 25-30739

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**ARCHER WESTERN CONTRACTORS, L.L.C.,**
*PLAINTIFF – APPELLEE*

**v.**

**MCDONNEL GROUP, L.L.C.,**
*DEFENDANT – APPELLANT*

---

On Appeal from the United States District Court
for the Eastern District of Louisiana, No. 2:22-cv-05323
The Honorable Wendy B. Vitter, Presiding

---

# BRIEF OF PLAINTIFF–APPELLEE ARCHER WESTERN CONTRACTORS, L.L.C.

---

Daniel Lund III (La. Bar No. 19014)
Jeremy T. Grabill (La. Bar No. 34924)
Patrick M. Judd (La. Bar No. 40415)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email: daniel.lund@phelps.com
jeremy.grabill@phelps.com
patrick.judd@phelps.com

ATTORNEYS FOR PLAINTIFF–APPELLEE ARCHER WESTERN CONTRACTORS, L.L.C.

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. Archer Western Contractors, L.L.C., *Plaintiff–Appellee*

2. Daniel Lund III, Jeremy T. Grabill, and Patrick M. Judd of PHELPS DUNBAR LLP, *Counsel for Archer Western Contractors, L.L.C.*

3. Carter B. Reid and Dominick P. Weinkam of WATT, TIEDER, HOFFAR & FITZGERALD, LLP, *Counsel for Archer Western Contractors, L.L.C.*

4. The McDonnel Group, L.L.C., *Defendant–Appellant*

5. Randall A. Smith, Dylan T. Leach, and Andre M. Stolier of SMITH & FAWER, LLC, *Counsel for The McDonnel Group, L.L.C.*

SO CERTIFIED, this 20th day of May, 2026.

*/s/ Daniel Lund III*
Daniel Lund III

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff–Appellee Archer Western Contractors, L.L.C. does not believe that oral argument is necessary to resolve this case. The parties' briefs adequately address the narrow attorneys' fee issue raised by Defendant–Appellant The McDonnel Group, L.L.C. The magistrate judge's and district court's thorough rulings involved the straightforward application of established law and precedent, and this Court only reviews fee decisions for abuse of discretion. This Court can and should affirm without the need for oral argument.

**TABLE OF CONTENTS**


**CERTIFICATE OF INTERESTED PERSONS ....................... i**

**STATEMENT REGARDING ORAL ARGUMENT ............... ii**

**TABLE OF CONTENTS ....................................................... iii**

**TABLE OF AUTHORITIES .................................................... v**

**INTRODUCTION ....................................................................... 1**

**STATEMENT OF THE CASE .................................................. 4**

- **I. The Joint Venture Agreement and the Disputes Giving Rise to This Appeal .................................. 4**
- **II. Underlying Litigation Between Archer Western and TMG .................................................................. 5**
- **III. Post-Judgment Motions for Attorneys' Fees ..... 8**
- **IV. The Magistrate Judge's Recommendation and the District Court's Order .................................. 10**

**SUMMARY OF THE ARGUMENT ....................................... 12**

**STANDARD OF REVIEW ....................................................... 13**

**ARGUMENT ............................................................................ 14**

- **I. There Was No Determination That Archer Western Breached the Joint Venture Agreement. ........................................................... 14**
  - **A. Article 15(e) conditions any fee award on an adjudicated breach. ............................... 15**
  - **B. The district court correctly rejected TMG's attempt to recast Article 15(e) as a prevailing-party provision........................ 20**

II. TMG's Fee Claim Is Procedurally Improper. .. 23

A. A post-judgment fee motion cannot be used to obtain a new breach determination. .......... 23

B. TMG's newly asserted breach theory is a barred compulsory counterclaim. .......... 25

C. Unilateral pre-litigation default notices cannot satisfy Article 15(e). .......... 28

D. The jury verdict established only that TMG did not breach. .......... 29

CONCLUSION .......... 31

CERTIFICATE OF SERVICE .......... 33

CERTIFICATE OF COMPLIANCE .......... 34

## TABLE OF AUTHORITIES

### Cases

*Archer Western Contractors, L.L.C. v. McDonnel Grp., L.L.C.* Nos. 25-30321 & 25-30479, 2026 WL 839113 (5th Cir. Mar. 26, 2026) .......... 5, 6, 8, 17

*Baker v. Gold Seal Liquors, Inc.* 417 U.S. 467 (1974) .......... 26

*Carolina Power & Light Co. v. Dynegy Mktg. & Trade* 415 F.3d 354 (4th Cir. 2005) .......... 24

*Deus v. Allstate Insurance Co.* 15 F.3d 506 (5th Cir. 1994) .......... 23

*Genesis Marine, LLC of Del. v. Hornbeck Offshore Servs., LLC* No. CV 17-6763, 2019 WL 1325983 (E.D. La. Mar. 25, 2019) *aff'd*, 951 F.3d 629 (5th Cir. 2020) .......... 20

*Gleason v. Nordwest Mortg., Inc.* 243 F.3d 130 (3d Cir. 2001) .......... 25

*Land Coast Insulation, Inc. v. Gootee Constr., Inc.* 369 So. 3d 811 (La. App. 4 Cir. 2021) .......... 22

*McDonald's Corp. v. Watson* 69 F.3d 36 (5th Cir. 1995) .......... 13

*Myriad Dev., Inc. v. Alltech, Inc.* 817 F. Supp. 2d 946 (W.D. Tex. 2011) .......... 16

*N. Cypress Med. Ctr. Op. Co. v. Cigna Healthcare* 781 F.3d 182 (5th Cir. 2015) .......... 26

*Orgeron v. Orgeron* 413 So. 3d 390 (La. 2025) .......... 16

*Ray Haluch Gravel Co. v. Cent. Pension Fund*
571 U.S. 177 (2014) ........................................................ 24, 25

*Schwegmann Westside Expressway Inc. v. K-Mart Corp.*
111 F.3d 893 (5th Cir. 1997) ........................................................ 19

*Seismic Wells, L.L.C. v. Sinclair Oil & Gas Co.*
750 F. App'x 278 (5th Cir. 2018) ........................................................ 19

*Superior Energy Servs. LLC v. Bordelon Marine Inc.*
351 F. App'x 862 (5th Cir. 2009) ........................................................ 24

*White v. Rhone-Poulenc Basic Chems. Co.*
49 F.3d 728 (5th Cir. 1994) ........................................................ 14

**Other Authorities**

6 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS ........................................ 17

BLACK'S LAW DICTIONARY 261 (6th ed. 1990) ........................................ 24

**Rules**

Louisiana Civil Code, Article 2045 ........................................ 15, 16

Louisiana Civil Code, Article 2046 ........................................ 15

Louisiana Civil Code, Article 2047 ........................................ 15

Louisiana Civil Code, Article 2050 ........................................ 15

## INTRODUCTION

"Without a predicate determination of a party's default," liability for attorneys' fees "cannot be imposed."[1] Those are not the words of Plaintiff–Appellee Archer Western Contractors, L.L.C. ("Archer Western"). They are TMG's. Before the district court, Defendant–Appellant the McDonnell Group, L.L.C. ("TMG") expressly acknowledged that Article 15(e) of the parties' joint venture agreement imposes attorneys' fee liability only after a threshold determination that a party is a "Defaulting Party," and that absent such a predicate determination, fee liability cannot arise. That understanding reflected the plain language of the agreement—and it was shared by the magistrate judge and the district court.

This matter is on appeal only because TMG abandoned that interpretation after final judgment. But its prior position was correct, following directly from the joint venture agreement's plain language and structure. Article 15(e) conditions fee liability on a predicate determination that a party is both a "Defaulting Party" and one that

[1] ROA.2948–2949 (TMG's Opposition to Partial Summary Judgment, pp. 23–24).

has breached the agreement. TMG now asks this Court to impose fee liability without any finding that Archer Western breached or defaulted under the agreement. In doing so, TMG seeks an unreasonable result, one it previously told the district court was impermissible.

The issue before the Court is straightforward contract interpretation. The joint venture agreement does not contain a prevailing-party attorneys' fee provision. It contains a narrow, conditional fee-shifting clause that applies only to legal expenses "arising out of the Defaulting Party's *breach*."[2] Here, there has never been any claim, finding, or verdict that Archer Western breached or defaulted under the agreement. TMG never asserted a breach counterclaim, never litigated one, and never obtained a judicial determination of breach. The jury found only that TMG did not breach its capital-contribution obligations—nothing more.

Unable to identify any adjudicated breach by Archer Western, TMG now attempts to collapse the agreement's distinct concepts of

[2] ROA.5011 (Joint Venture Agreement, Article 15(e)) (emphasis added).

"default" and "breach" and to recast Article 15(e) as a general prevailing-party clause. Both the magistrate judge and the district court correctly rejected that rewrite, explaining that "default" is a legal status while "breach" is a claim requiring judicial adjudication. Accepting TMG's new position would permit either party to unilaterally trigger fee shifting simply by issuing a notice of default—an absurd result the parties plainly did not intend and one TMG itself previously disavowed.

The procedural posture of this fee dispute only underscores the flaw in TMG's argument. This Circuit treats attorneys' fee motions as collateral matters, not as vehicles for obtaining new substantive liability determinations after judgment. Having declined to plead a compulsory counterclaim for breach of contract, TMG cannot now use a post-judgment fee request to litigate that claim in reverse. The district court applied settled Fifth Circuit law, enforced the agreement as written, and correctly denied TMG's motion for attorneys' fees.

This Court should affirm.

## STATEMENT OF THE CASE

### I. The Joint Venture Agreement and the Disputes Giving Rise to This Appeal

This is the second time this Court has reviewed a dispute arising from the joint venture formed by Archer Western and TMG. In 2011, the parties entered a joint venture agreement to pursue and perform a public construction project for the Parish of Orleans, State of Louisiana (the "Owner").[3] The Owner accepted the joint venture's bid, and the parties entered into a contract to construct the Orleans Parish Sheriff's Office Inmate Processing Center.[4] Under the agreement, Archer Western held a 70% interest and TMG a 30% interest, and the parties agreed to share profits and losses in proportion to those interests.

Cash-flow difficulties arose on the project, as well as disputes and litigation involving the Owner and the joint venture. Acting in its capacity as the managing party, Archer Western issued capital-contribution demands to fund performance of the Project. TMG did not fund the demanded contributions. Archer Western advanced the

[3] *See* ROA.4112–4133 (Joint Venture Agreement).

[4] ROA.749 (Affidavit of Michael Whelan, ¶ 7).

necessary funds itself and treated certain amounts as demand loans attributable to TMG.

This case also involves TMG's breach of the joint venture agreement through a separate, undisclosed settlement transaction. In 2022, without informing Archer Western or the joint venture, TMG entered an Agreement of Compromise, Release, Assignment and Settlement with the Owner (the "Settlement Agreement"). *Archer Western Contractors, L.L.C. v. McDonnel Grp., L.L.C.*, Nos. 25-30321 & 25-30479, 2026 WL 839113, at *1 (5th Cir. Mar. 26, 2026). The Settlement Agreement included a $2.7 million payment that TMG deposited into its own account. *Id.* at *4. TMG did not remit those funds to the joint venture or to Archer Western.

## II. Underlying Litigation Between Archer Western and TMG

Archer Western filed this lawsuit against TMG in December 2022. Its claims fell into two categories: (1) claims arising from TMG's failure to fund capital contributions, and (2) claims arising from TMG's secret Settlement Agreement with the Owner.[5] As to both categories,

[5] ROA.34–50 (Complaint).

Archer Western asserted claims for breach of contract and breach of fiduciary duty, and it asserted enrichment without cause in connection with the Settlement Agreement.

Extensive motion practice followed. Relevant to the first appeal to this Court, the district court granted summary judgment in Archer Western's favor on its breach-of-contract claim arising from the Settlement Agreement.[6] On March 26, 2026, this Court affirmed that ruling, including the determination that TMG breached the joint venture agreement by retaining the $2.7 million settlement payment. *Archer Western*, 2026 WL 839113, at *4.

The remaining claims—those concerning capital contributions—proceeded to trial. The jury returned a verdict in favor of TMG on those claims, finding only that TMG did not breach the agreement by failing to make capital contributions.[7] The district court's final judgment required TMG to deposit the $2.7 million settlement funds into the joint venture's account and entered judgment in TMG's favor on Archer

[6] ROA.2321–2358 (District Court Order Granting Motion for Partial Summary Judgment).

[7] ROA.3666 (Verdict Form).

Western's remaining breach-of-contract and breach-of-fiduciary-duty claims.[8]

TMG did not assert a counterclaim. Any claim by TMG that Archer Western breached the joint venture agreement by issuing capital-contribution demands would have arisen from the same transaction or occurrence as Archer Western's claims seeking to enforce those demands. The jury thus made no finding that Archer Western breached or defaulted under the joint venture agreement; it determined only that TMG did not breach its capital-contribution obligations:[9]

**VERDICT FORM**

**I. <u>Breach of Joint Venture Agreement/Contract claim</u>**

1. Do you find by a preponderance of the evidence that The McDonnel Group breached the joint venture agreement?

Yes______________

No______✓________

[8] ROA.3696–3697 (Final Judgment).

[9] ROA.3666 (Verdict Form).

## III. Post-Judgment Motions for Attorneys' Fees

After final judgment, the parties filed competing motions for attorneys' fees under the agreement's fee-shifting provision, Article 15(e), which provides for payment of legal expenses "arising out of the Defaulting Party's breach."[10] Article 15(e) states in relevant part: "The Defaulting Party further agrees to pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach, including court costs and disbursements and fees on a solicitor and his own client basis."[11]

The district court granted in part Archer Western's motion for attorneys' fees based on the summary-judgment determination that TMG breached the joint venture agreement by entering into the secret Settlement Agreement. In its March 26, 2026 opinion, this Court affirmed that fee award, emphasizing the district court had expressly found a breach by TMG. *Archer Western*, 2026 WL 839113, at *4.

---

[10] ROA.5011 (Joint Venture Agreement, Article 15(e)).

[11] ROA.5011 (Joint Venture Agreement, Article 15(e)).

TMG separately sought $412,653.00 in attorneys' fees for work it attributed to defending the capital-contribution claims.[12] TMG's theory was that Archer Western became a "Defaulting Party" because TMG issued written notices accusing Archer Western of default based on the capital-contribution demands and Archer Western did not "cure" within the contractual period. TMG sought fees despite the absence of any judicial determination that Archer Western breached or defaulted under the joint venture agreement. No claim, verdict, or court order has ever found that Archer Western breached the agreement.

In opposition, Archer Western explained that Article 15(e) conditions fee shifting on a breach, that no breach by Archer Western was ever adjudicated, and that a post-judgment fee motion is not a vehicle for litigating a new breach claim. Archer Western further noted that TMG never pursued a counterclaim seeking a breach determination and previously relied only on an affirmative defense

[12] ROA.3899–3978 (TMG's Motion for Attorneys' Fees).

alleging Archer Western committed a "prior breach," a defense that the district court rejected and dismissed.[13]

## IV. The Magistrate Judge's Recommendation and the District Court's Order

The magistrate judge recommended denying TMG's fee request, concluding that Article 15(e) requires a breach to trigger fee shifting.[14] The magistrate judge explained that TMG's interpretation would permit fees based solely on unilateral default notices, contrary to the provision's language tying fees to actions "arising out of the Defaulting Party's *breach*."[15] The magistrate judge further declined to allow TMG to use a post-judgment fee motion to reach the merits of an un-litigated breach claim. Absent a "judicial determination of breach," TMG was not entitled to fees under Article 15(e).[16]

[13] ROA.1311 (TMG's Affirmative Defense IX, p. 19); ROA.2492 (District Court Order Granting Summary Judgment, p. 16) (dismissing TMG's Affirmative Defense IX because "TMG does not offer any summary judgment evidence refuting AWC's evidence that TMG waived AWC's prior alleged breaches").

[14] ROA.4147 (Magistrate Judge's R&R, p. 5).

[15] ROA.4147 (Magistrate Judge's R&R, p. 5) (emphasis added).

[16] ROA.4147 (Magistrate Judge's R&R, p. 5).

TMG objected, arguing that "default" alone was sufficient and that no adjudicated breach was required.[17] After *de novo* review, the district court overruled TMG's objection, adopted the report and recommendation, and denied TMG's motion. The district court reiterated that attorneys' fees motions are "collateral matters" dependent on the merits and must be evaluated on their own substantive footing.[18] The court further held that, under the agreement's language, "default" is not synonymous with "breach," and that awarding fees without a judicial breach determination would allow either party to unilaterally trigger fee shifting—an "absurd result."[19]

Because Archer Western was never found to have breached the joint venture agreement and Article 15(e) requires a breach to shift fees, the district court denied TMG's request for fees. TMG now appeals that order.

---

[17] ROA.4187–4190 (TMG's Objection to R&R, pp. 6–9).

[18] ROA.4208 (District Court Order Adopting R&R, p. 5).

[19] ROA.4209, ROA.4211 (District Court Order Adopting R&R, pp. 6, 8).

## SUMMARY OF THE ARGUMENT

TMG is not entitled to any relief in this appeal and the district court's ruling should be affirmed.

**First**, the district court correctly denied TMG's motion for attorneys' fees because Article 15(e) of the joint venture agreement requires a predicate judicial determination that a party both breached and defaulted under the agreement before fee liability may be imposed. That reading follows directly from the provision's text, structure, and use of the possessive phrase "the Defaulting Party's breach." It was the interpretation adopted by the magistrate judge and the district court—and it was the interpretation TMG itself previously acknowledged.

No court or jury has ever found that Archer Western breached or defaulted under the agreement. TMG never asserted or litigated a breach claim against Archer Western, and the jury verdict established only that TMG did not breach its capital-contribution obligations. Because there was no adjudicated breach by Archer Western, Article 15(e) was never triggered, and TMG is not entitled to attorneys' fees.

**Second**, TMG's fee request fails for independent procedural reasons. A post-judgment motion for attorneys' fees is a collateral matter, not a vehicle for obtaining a new substantive determination of breach after final judgment. Any claim that Archer Western breached the joint venture agreement based on capital-contribution demands would have been a compulsory counterclaim arising from the same transaction or occurrence as Archer Western's claims.

TMG chose not to plead such a claim and cannot now use fee motion practice to litigate it in reverse. Allowing that end-run would undermine settled Fifth Circuit precedent, distort the American Rule, and permit unilateral fee-shifting based on unadjudicated accusations of default. The district court correctly rejected that approach and acted well within its discretion in denying TMG's motion.

Accordingly, the district court's order denying TMG's request for attorneys' fees should be affirmed in full.

## STANDARD OF REVIEW

This Court reviews a district court's denial of attorneys' fees provided by contract for abuse of discretion. *McDonald's Corp. v. Watson*, 69 F.3d 36, 45 (5th Cir. 1995). Reversal is warranted only if

the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or rendered a decision that was arbitrary or unreasonable in light of the record. *White v. Rhone-Poulenc Basic Chems. Co.*, 49 F.3d 728 (5th Cir. 1994).

## ARGUMENT

### I. There Was No Determination That Archer Western Breached the Joint Venture Agreement.

TMG's contractual claim to attorneys' fees fails at the threshold because no court or jury ever determined that Archer Western breached or defaulted under the joint venture agreement. Article 15(e) authorizes fee shifting only for legal expenses "arising out of the Defaulting Party's breach." The magistrate judge and district court correctly held that this provision is not triggered by inference, unilateral accusations, or a defense verdict finding only that TMG did not breach its own obligations. TMG's argument to the contrary rests entirely on speculation—that its successful defense against Archer Western's capital-contribution claims implies an unadjudicated breach by Archer Western sufficient to trigger Article 15(e). It does not.

### *A. Article 15(e) conditions any fee award on an adjudicated breach.*

The parties agree that entitlement to attorneys' fees turns on the joint venture agreement.[20] The dispute is whether Article 15(e) permits fees absent a judicial determination that the opposing party breached the agreement. The text answers that question.

Louisiana courts interpret contracts to determine "the common intent of the parties." La. Civil Code art. 2045. If contractual terms "are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civil Code art. 2046. And words in "a contract must be given their generally prevailing meaning." La. Civil Code art. 2047. A court should not construe a contractual term or phrase in isolation. Rather, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civil Code art. 2050.

Article 15(e) provides that the "Defaulting Party" must pay legal expenses incurred by the "Non-Defaulting Party" in an action "arising

[20] TMG's Opening Brief, p. 10.

out of the Defaulting Party's breach." Article 15(c) defines a "Defaulting Party" as one in default of its obligations under the agreement.[21] Read together—as Louisiana law requires—these provisions condition fee liability on a predicate determination that a party both defaulted under and breached the agreement.

The agreement's separate use of "default" and "breach" in the same provision reflects the "common intent" to give those terms distinct meanings, not to collapse them into a single, interchangeable concept. La. Civil Code art. 2045; *see also Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 965 (W.D. Tex. 2011) ("[T]he fact that the parties chose to use different terms in connection with the different remedies available indicates that the parties intended 'default' and 'breach' to have different meanings."). Treating the terms as synonymous would improperly neutralize the agreement's language. *Orgeron v. Orgeron*, 413 So. 3d 390, 393 (La. 2025) ("A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according

[21] ROA.5010 (Joint Venture Agreement, Article 15 (c)).

to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage.").

The district court properly explained that distinction. Under Louisiana law, default is a legal status[22]; breach is a claim requiring adjudication.[23] Article 15(e) therefore requires more than a notice of default or a litigating position—it requires a judicial determination of breach before fee liability may attach.

That is precisely how Article 15(e) is designed to operate, and how Archer Western proceeded here. Archer Western brought an affirmative claim for breach of contract, proved that breach, and obtained a judicial determination that TMG violated multiple provisions of the joint venture agreement by retaining the $2.7 million settlement payment. This Court affirmed both the breach finding and the resulting fee award. *Archer Western*, 2026 WL 839113, at *4. That

---

[22] *Meaning*, 6 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 1.2 (2d ed.) ("When an obligor fails to perform at the time he is expected to render performance, thereby giving rise to the warranted conjecture that if he still intends to perform his performance will be delayed, that necessary transition is accomplished by the *mise en demeure,* the act of putting of the obligor in default[.]").

[23] *Delay, default, fault, breach and the meaning of words*, 6 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 1.15 (2d ed.) ("[I]t can be said that an obligor who delays the rendering of performance has incurred a breach of contract when he has been put in delay—or default[.]").

sequence—breach adjudicated first, fee liability second—is not incidental; it is the condition precedent Article 15(e) imposes. It underscores why TMG's attempt to obtain fees without ever pleading or proving a breach by Archer Western cannot be reconciled with the contract the parties actually executed.

TMG's own prior position in this litigation confirms this reading. In opposing an earlier request by Archer Western for attorneys' fees in a motion for summary judgment, TMG argued that an award would be premature. TMG acknowledged that "Article 15(e) imposes liability upon any Defaulting Party" only for losses "arising out of any breach" and that "[w]ithout a predicate determination of a party's default, such liability cannot be imposed."[24] That concession reflects the agreement's plain meaning and forecloses TMG's attempt to recover fees absent any adjudicated breach or default by Archer Western.

Even apart from the absence of a breach, TMG's request fails for an additional reason that TMG itself undoubtedly defaulted under the joint venture agreement. Article 15(e) permits recovery only by a

[24] ROA.2945–2946 (TMG's Opposition to Partial Summary Judgment, pp. 23–24).

"Non-Defaulting Party."[25] TMG's undisputed status as a Defaulting Party, which has been established by the adjudicated breaches affirmed by this Court, precludes any entitlement to fees under the provision. Resolution of the secret Settlement Agreement claims before trial did not transform TMG into a Non-Defaulting Party or revive a fee entitlement the agreement does not provide.

Finally, fee-shifting provisions are strictly construed against departing from the American Rule. Courts in this Circuit enforce such provisions only according to their precise terms and decline to extend them beyond the circumstances the parties expressly agreed to cover. *See, e.g.*, *Seismic Wells, L.L.C. v. Sinclair Oil & Gas Co.*, 750 F. App'x 278, 281–82 (5th Cir. 2018) (declining to award contractual attorneys' fees where the dispute fell outside the scope of the fee-shifting provision); *Schwegmann Westside Expressway Inc. v. K-Mart Corp.*, 111 F.3d 893 (5th Cir. 1997) (per curiam) (affirming denial of attorneys' fees where the action did not seek to enforce or interpret the contract containing the fee provision); *Genesis Marine, LLC of Del. v. Hornbeck*

[25] ROA.5011 (Joint Venture Agreement, Article 15(e)) (emphasis added).

*Offshore Servs., LLC*, No. CV 17-6763, 2019 WL 1325983, at *2–3 (E.D. La. Mar. 25, 2019) (denying contractual attorneys' fees where the dispute litigated did not fall within the contract containing the fee provision, and rejecting reliance on overlapping facts to expand fee entitlement), *aff'd*, 951 F.3d 629 (5th Cir. 2020).

Article 15(e) covers actions arising out of an adjudicated breach—not defensive victories, unilateral default notices, or implied findings never made. Because Archer Western was never determined to have breached or defaulted under the joint venture agreement, the district court correctly denied TMG's request for attorneys' fees.

### *B. The district court correctly rejected TMG's attempt to recast Article 15(e) as a prevailing-party provision.*

TMG's theory on appeal rests on a fundamental misreading of Article 15(e). It assumes that the provision is triggered whenever a party successfully "defends" a lawsuit that allegedly "aris[es] out of" the opponent's breach, even in the absence of any affirmative breach claim or judicial determination of breach.[26] On that view, TMG contends that by defeating Archer Western's capital-contribution

[26] TMG's Opening Brief, p. 20.

claims, it necessarily established that Archer Western's capital calls were unauthorized and therefore constituted a "breach," making Archer Western the "Defaulting Party" whose breach triggered fee shifting.

That reading rewrites the contract. Article 15(e) is not a prevailing-party provision, and it does not award fees merely because a party prevails in litigation. It authorizes fee shifting only for legal expenses incurred to protect interests or defend an action "arising out of the Defaulting Party's breach." By collapsing the agreement's distinct concepts of "default" and "breach," TMG seeks to convert Article 15(e) into a general prevailing-party clause—something to which the parties plainly did not agree.

TMG's "prevailing party" framing is revealing. If the parties had wanted a prevailing-party attorneys' fee provision, they could have written one (as many contracts do). They did not. Instead, Article 15(e) fees are shifted only when the "Non-Defaulting Party" incurs legal expenses in an action arising out of the Defaulting Party's breach. And the possessive phrasing—"Defaulting Party's breach"—matters. It ties the triggering breach to the specific defaulting party, not to any

abstract notion that a defense verdict "necessarily" means the plaintiff breached.

The lower courts' interpretation does not render the "defend any action" language meaningless.[27] The clause naturally covers situations where the Non-Defaulting Party must defend actions brought by third parties that arise out of the Defaulting Party's breach—precisely the sort of risk a joint venture agreement would sensibly allocate. This case itself arose from a large public construction project that generated disputes and litigation involving the Owner, the joint venture, and various subcontractors, all underscoring why the parties would include "defend any action" language tied to the Defaulting Party's breach. *See generally, e.g.*, *Land Coast Insulation, Inc. v. Gootee Constr., Inc.*, 369 So. 3d 811 (La. App. 4 Cir. 2021) (subcontractor suing "the McDonnel Group, L.L.C./Archer Western Contractors, Ltd. Joint Venture ('Joint Venture')" for allegedly failing to pay for the project's insulation work).

On the district court and magistrate judge's reading, Article 15(e) remains fully operative because once a party is judicially determined

[27] *Contra* TMG's Opening Brief, pp. 22–23.

to have breached, the Non-Defaulting Party may recover legal expenses incurred either to protect its interests or to defend third-party actions arising out of that Defaulting Party's breach.

## II. TMG's Fee Claim Is Procedurally Improper.

TMG's appeal fails for an independent procedural reason. A post-judgment motion for attorneys' fees is a collateral matter, not a vehicle for obtaining a new substantive determination that Archer Western breached the joint venture agreement. Because TMG never pleaded or litigated a breach claim—and because any such claim would have been a compulsory counterclaim—the district court correctly rejected TMG's attempt to use fee motion practice to reach the merits after final judgment.

### *A. A post-judgment fee motion cannot be used to obtain a new breach determination.*

This Circuit draws a clear distinction between collateral requests for attorneys' fees and substantive claims for relief. As *Deus v. Allstate Insurance Co.*, 15 F.3d 506 (5th Cir. 1994), explains, attorneys' fees are generally "collateral matters" that are "subsidiary to another action," not independent claims "essential to the outcome of the case as a

whole." *Id.* at 521 (quoting BLACK'S LAW DICTIONARY 261 (6th ed. 1990)). These types of collateral claims to attorneys' fees are not independent "substantive" claims "for relief essential to the outcome of the case as a whole." *Id.*

When entitlement to fees depends on establishing new substantive liability—as TMG contends here—that entitlement must be pled and litigated through proper claims, not adjudicated for the first time in a post-judgment fee motion. *Id.* at 522 (discussing using "intervention [as] an independent claim for damages under [a] retainer contract"). Consistent with *Deus*, a breach of contract justifying attorneys' fees must be tested through counterclaims, intervention, or other substantive pleadings. *See Superior Energy Servs. LLC v. Bordelon Marine Inc.*, 351 F. App'x 862, 863 (5th Cir. 2009) (discussing "counterclaim for attorney's fees and costs" premised on a contract); *Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354 (4th Cir. 2005) ("[T]reating a claim for attorneys fees as a collateral issue makes sense only when the fees are sought as costs for prosecuting an underlying litigation."), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund*, 571 U.S. 177 (2014);

*Gleason v. Nordwest Mortg., Inc.*, 243 F.3d 130, 137–38 (3d Cir. 2001) (distinguishing between contractual attorneys' fees based on prevailing in litigation from those based on some other grounds, and classifying the former as collateral, and the latter as substantive), *abrogated on other grounds by Ray Haluch Gravel*, 571 U.S. 177.

TMG followed none of those procedures. It never pled a breach claim against Archer Western and never sought a judicial determination of breach during the merits phase of the case. Instead, TMG attempted to obtain that determination after final judgment through a fee motion. The district court correctly rejected that procedural end-run and declined to transform a collateral fee request into shadow litigation over an unpled and unadjudicated breach claim.

### ***B. TMG's newly asserted breach theory is a barred compulsory counterclaim.***

Even if a post-judgment fee motion could be used to adjudicate substantive liability (it cannot), TMG's breach theory would still fail because it is a compulsory counterclaim that TMG chose not to plead.[28] Any claim that Archer Western breached the joint venture agreement

[28] ROA.4208–4209 (District Court's Order Adopting R&R, pp. 5–6).

by issuing capital-contribution demands arises from the same transaction or occurrence as Archer Western's affirmative claims seeking to enforce those demands. Under Federal Rule of Civil Procedure 13(a), such a claim had to be asserted during the merits phase of the litigation or be forfeited. The failure to file a compulsory counterclaim bars future litigation of the claim. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974).

A counterclaim is compulsory when: (1) "the issues of fact and law raised by the claim and counterclaim largely are the same," (2) "*res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule," (3) "substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim," or (4) "there is [a] logical relationship between the claim and the counterclaim." *N. Cypress Med. Ctr. Op. Co. v. Cigna Healthcare*, 781 F.3d 182, 205 n.146 (5th Cir. 2015).

Each of the Rule 13(a) factors is satisfied. Through its post-judgment fee motion, TMG asserted, for the first time, an unpled claim that Archer Western breached the joint venture agreement by issuing capital-contribution demands, even though those demands

were the very subject of Archer Western's complaint. TMG filed no counterclaim and never sought a breach determination during the merits phase of the case.[29]

Allowing TMG to proceed in this manner would defeat Rule 13(a)'s core purpose by permitting serial litigation of claims that should have been resolved in a single action. It would also invert the sequence the parties' agreement requires—adjudicated breach first, fee liability second—by allowing a breach finding to be manufactured after final judgment through fee motion practice. The district court correctly refused to permit that end-run and properly rejected TMG's attempt to litigate an unpled breach claim through a post-judgment request for attorneys' fees.

---

[29] TMG's only pled allegation of breach by Archer Western appeared in its Ninth Affirmative Defense, which the district court dismissed. ROA.1311 (TMG's Affirmative Defense IX, p. 19); ROA.2492 (District Court Order Granting Summary Judgment, p. 16) (dismissing TMG's Affirmative Defense IX because "TMG does not offer any summary judgment evidence refuting AWC's evidence that TMG waived AWC's prior alleged breaches"). A dismissed affirmative defense cannot serve as the basis for TMG's present claim for attorneys' fees.

### *C. Unilateral pre-litigation default notices cannot satisfy Article 15(e).*

Even if TMG could pursue a breach claim at this stage, its theory still fails on the merits. TMG identifies no provision of the joint venture agreement that Archer Western allegedly breached. Instead, it relies exclusively on its own pre-litigation correspondence and disputed legal positions reflected in the pretrial order to supply the "default" and "breach" Article 15(e) requires.[30] Those materials amount to nothing more than unilateral accusations, not conclusive evidence.

That reliance directly conflicts with the district court's instructions to the jury. In response to TMG's introduction of its pre-litigation correspondence, the district court instructed that opinions expressed in exhibits were "just that, one person's opinion."[31] Legal issues were for the court alone, and so the jury was told to "disregard any testimony or exhibit reference related to any fault of Archer Western because there is no such claim" asserted.[32] The jury

---

[30] *See, e.g.*, TMG's Opening Brief, pp. 16–18.

[31] ROA.3997 (Feb. 14, 2025, Trial Transcript, p. 52:14).

[32] ROA.3997 (Feb. 14, 2025, Trial Transcript, p. 52:21–23).

was never charged with deciding whether Archer Western breached or defaulted under the agreement, and it returned no verdict on that issue.

TMG's pre-litigation assertions therefore carry no legal weight. Article 15(e) requires that a party be found in default or breach of the joint venture agreement, not merely accused of it. Having failed to plead, litigate, or obtain any determination that Archer Western breached the agreement, TMG cannot now rely on its own correspondence to supply the predicate determination Article 15(e) demands.

### *D. The jury verdict established only that TMG did not breach.*

A jury verdict finding that a defendant did not breach a contract stands for that proposition, and nothing more. That is especially true here, where the verdict form asked a single, narrow question: "Do you find by a preponderance of the evidence that The McDonnel Group breached the joint venture agreement?"[33] The jury answered "No."

[33] ROA.3666 (Verdict Form).

That response cannot be transformed into an implied, un-litigated finding that Archer Western breached the agreement.

TMG nevertheless urges this Court to draw precisely that inference. It offers no legal or factual authority to support the leap, and its position ignores the many reasons unrelated to any breach by Archer Western that the jury could have found in TMG's favor. For example, the jury could have credited the sworn testimony of TMG's president, Allen McDonnel, who repeatedly emphasized that any imbalance in capital contributions would be addressed through the joint venture's final accounting. Mr. McDonnel testified:

> Q. All right. Do you anticipate once those are resolved, there will be this final accounting called for by the joint venture?
>
> A. Yes.
>
> Q. And will you abide by any final determination made in the final accounting through the parties or if necessary by court?
>
> A. Correct. We will.[34]

[34] ROA.4003 (Feb. 13, 2025, Trial Transcript, p. 69:2–8); *see also* ROA.4004 (Feb. 13, 2025, Trial Transcript, p. 230:15–20).

That testimony illustrates the flaw in TMG's argument. A verdict rejecting Archer Western's capital-contribution claims does not establish—expressly or implicitly—that Archer Western breached the joint venture agreement. It establishes only what the jury was asked to decide: whether TMG breached its capital-contribution obligations. The general verdict form provides no insight into which of these considerations the jury found persuasive.

A general defense verdict cannot be expanded after the fact to supply a breach finding the jury was never asked to make. Because no court or jury ever determined that Archer Western breached or defaulted under the agreement, TMG cannot satisfy the predicate required by Article 15(e). The district court therefore correctly denied TMG's motion for attorneys' fees, and that ruling should be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's denial of TMG's request for attorneys' fees.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: *_/s/ Daniel Lund III_________*

Daniel Lund III (La. Bar No. 19014)
Jeremy T. Grabill (La. Bar No. 34924)
Patrick M. Judd (La. Bar No. 40415)
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email: daniel.lund@phelps.com
jeremy.grabill@phelps.com
patrick.judd@phelps.com

**ATTORNEYS FOR PLAINTIFF–APPELLEE ARCHER WESTERN CONTRACTORS, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, I electronically filed the above and foregoing Original Brief of Plaintiff–Appellee Archer Western Contractors, L.L.C., with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

SO CERTIFIED, this 20th day of May, 2026.

*/s/ Daniel Lund III*
Daniel Lund III

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(g) and Fifth Circuit Rule 32.3, the undersigned counsel certifies as follows:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5390 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Century Schoolbook 14-point font in the text and Century Schoolbook 12-point font in footnotes.

SO CERTIFIED, this 20th day of May, 2026.

*/s/ Daniel Lund III*
Daniel Lund III