No. 25-30739

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____


ARCHER WESTERN CONTRACTORS, LLC
*Plaintiff-Appellee*
v.
MCDONNEL GROUP, LLC
*Defendant-Appellant*


_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA,
CIVIL ACTION NO. 2:22-CV-05323-WBV-MBN,
HONORABLE WENDY B. VITTER PRESIDING


_____


**REPLY BRIEF OF DEFENDANT-APPELLANT,
THE MCDONNEL GROUP, LLC**


_____


RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (No. 40063)
OF
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Defendant-Appellant,
The McDonnel Group, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ....................................................................................... 1

LAW & ARGUMENT ................................................................................ 6

I.   De Novo Review Governs the Legal Question Underlying the Denial ........ 6

   A.   AWC's "unilateral fee-shifting" concern is answered by Article 15(c)'s mandatory seven-day cure window. ................................................ 8

   B.   The "predicate determination" quotation was a prematurity argument, not a concession. ............................................................................ 9

   C.   AWC misquotes this Court's prior opinion. ..................................... 10

III.  The Plain Text of Article 15(e) Entitles TMG to Fees for Defending AWC's Capital-Contribution Action. ..................................................... 11

IV.  The Rulings Below Necessarily Adjudicate AWC's Breach of the JVA. .15

V.   AWC's Procedural Arguments Are Meritless. ........................................ 16

VI.  AWC's "TMG Is Itself a Defaulting Party" Argument Cannot Defeat TMG's Fee Claim. ................................................................................. 17

CONCLUSION ......................................................................................... 18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS ............................................... 20

CERTIFICATE OF SERVICE ................................................................. 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Archer Western*,
   2026 WL 839113 ..............................................................................................4, 10
*Cable Marine, Inc. v. M/V Trust Me II*,
   632 F.2d 1344 (5th Cir. 1980) ...........................................................................7
*Deus v. Allstate Ins. Co.*,
   15 F.3d 506 (5th Cir. 1994) ...............................................................................17
*Fayerweather v. Ritch*,
   195 U.S. 276 (1904)................................................................................ 5, 15, 17
*Gulf Coast Workforce, L.L.C. v. Zurich Am. Ins. Co. of Illinois*,
   729 F. App'x 322 (5th Cir. 2018) ............................................................ 6, 15, 17
*McDonald's Corp. v. Watson*,
   69 F.3d 36 (5th Cir. 1995) .................................................................................7
*N. Cypress Med. Ctr. Op. Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) .............................................................................17

**Statutes:**

La. Civ. Code art. 2045 .............................................................................................13
La. Civ. Code art. 2047 .............................................................................................13
La. Civ. Code art. 2049 .............................................................................................13
La. Civ. Code art. 2050 .........................................................................................3, 13

**Rules:**

Federal Rule of Civil Procedure 13 ..........................................................................17

**Other Authorities:**

6 La. Civ. L. Treatise, Law of Obligations § 1.2 (2d ed.) ........................................14

**INTRODUCTION**

Archer Western Contractors, LLC ("AWC") chastises The McDonnel Group, LLC ("TMG") for purportedly seeking attorneys' fees "without any finding that Archer Western breached or defaulted under the agreement."[1] That criticism ignores TMG's arguments and the rulings below; yet, it is also striking because AWC made *exactly* that kind of fee demand below—under the same provision (Article 15(e)). AWC told the district court that "[t]he attorneys' fees incurred in this action are 'legal expenses required of or by the Non-Defaulting Party [AWC] to protect their interests,'"[2] and that "TMG was in breach of the JVA, and therefore a Defaulting Party."[3] AWC sought—and obtained—its fees under a ruling that necessarily hinged on AWC establishing that TMG breached the Parties' Joint Venture Agreement ("the JVA"). TMG asks for the same treatment under the same clause, on the back of rulings that necessarily hinged on TMG establishing that *AWC* breached Article 7(a) of the JVA by pursuing certain claims against TMG in this matter. Indeed, AWC received $517,717.95 in fees for its own summary judgment; TMG seeks $412,735.00 for prevailing both on summary judgment and after a four-day jury trial.

AWC's Appellee Brief depends on three (3) mischaracterizations, each of which is dispositive once examined.

---

[1] Brief of Plaintiff-Appellee Archer Western Contractors, L.L.C. ("AWC's Br."), at 1-2.
[2] ROA.2611 (AWC's Memorandum in Support of Motion for Partial Summary Judgment, p. 24).
[3] ROA.3008 (AWC's Reply in Support of Motion for Summary Judgment, p. 10).

*First*, AWC tells this Court that TMG's position "would permit either party to unilaterally trigger fee shifting simply by issuing a notice of default."[4] AWC thus rests the foundation of its opposition on a classic straw man fallacy; TMG's Original Brief never advanced that position. Instead, TMG's position is that fee entitlement under the JVA is triggered because: (i) TMG issued written notices of default, pursuant to Article 15(c) of the JVA; (ii) AWC *did not* cure that default, rendering it a "Defaulting Party" under that same article; (iii) AWC *filed suit* on the very demands TMG had noticed as a breach; and (iv) TMG was required to "defend" and then defeated AWC's breach claim for the capital contributions, both at summary judgment and at trial, triggering the fee provision in Article 15(e). AWC's unilateral-fee-shifting hypothetical is built on the false presumption that TMG's sole basis is the notice of default that AWC never cured, when, in fact, TMG seeks fees for "defend[ing]" a meritless breach claim that itself arose from AWC's own breach of the JVA. AWC took no advantage of the cure window and instead doubled down on its capital-contribution demands in court. While it bears repeating that AWC lost on that claim, twice, the true rub lies in the reality AWC refuses to confront—TMG could not have defeated the breach claim under Article 7 unless the actual party breaching that provision was, in fact, AWC.

---

[4] AWC's Br. at 3.

This appeal turns on the plain text of Article 15, which AWC reads as if its *second* sentence simply did not exist. That sentence requires the Defaulting Party to "pay all legal expenses required of or by the Non-Defaulting Party to protect their interests *or **defend** any action arising out of the Defaulting Party's breach*."[5] AWC's reading would write the "defend" clause out of the contract and convert Article 15(e) into a one-way prevailing-party clause running in AWC's favor alone. Louisiana law forbids that result. *See* La. Civ. Code art. 2050. So does the parties' own pre-judgment conduct: at the pretrial conference both sides identified fee entitlement as a contested issue of *law* to be decided post-verdict on the existing record,[6] and AWC ultimately obtained its own Article 15(e) fees on exactly this path.

*Second*, AWC presents a single quoted sentence from TMG's Opposition to AWC's Motion for Partial Summary Judgment—"[w]ithout a predicate determination of a party's default," liability for fees "cannot be imposed"—as a binding TMG concession that Article 15(e) requires adjudication of an affirmative claim for breach.[7] It was nothing of the sort. The quoted language appears in a section of TMG's opposition memorandum entitled "AWC's request that this Court determine the availability of attorneys' fees is premature."[8] Thus, TMG's point was

---

[5] ROA.5011 (Joint Venture Agreement, Article 15(e)) (emphasis added).
[6] ROA.3337 (Pretrial Order).
[7] AWC's Br. at 1, 18 (quoting ROA.2948-2949).
[8] ROA.2948 (TMG's Opposition to AWC's Motion for Partial Summary Judgment, p. 23).

one of prematurity: while the factual dispute underlying AWC's breach of contract claim was still being litigated, the very question of who was the Defaulting Party remained unresolved—so AWC could not, *at that stage*, insist on an award of fees for being a "Non-Defaulting Party." AWC's mischaracterization of TMG's argument below may supply a facile sound bite, but the quoted assertion in no way undermines the instant appeal. After the rulings below resolved AWC's breach claim under Article 7 of the JVA *adversely to* AWC, any prematurity in TMG's request for fees vanished.

*Third*, AWC claims that, in the prior appeal, "this Court affirmed [AWC's] fee award, *emphasizing* the district court had *expressly* found a breach by TMG. *Archer Western*, 2026 WL 839113, at *4."[9] The cited passage says no such thing. The entire portion of this Court's decision addressing the fee award is three (3) sentences long and reads, in full:

> TMG maintains that we should vacate the fee award if we reverse the ruling below. It does not challenge the amount awarded, nor does it suggest that the award should be altered if we do not reverse the district court's judgment. Because the district court did not err in granting summary judgment for AWC, we decline to vacate the fee award.[10]

That passage neither "emphasiz[es]" nor even mentions any breach finding—it

---

[9] AWC's Br. at 8 (emphasis added).

[10] *Archer W. Contractors, L.L.C. v. McDonnel Grp., L.L.C.*, Nos. 25-30321 & 25-30479, 2026 WL 839113, at *4 (5th Cir. Mar. 26, 2026).

simply declines to vacate the fee award because the underlying summary-judgment ruling on the $2.7 million settlement-funds dispute was not disturbed. AWC's recasting of those three (3) sentences as appellate authority for its predicate-breach theory is unsupported. Stated otherwise, although this Court affirmed both the finding that TMG breached the agreement and the resulting fee award in AWC's favor, nothing in the decision suggests that the condition precedent for the fee award was AWC's success on the merits of an affirmative breach-of-contract claim.

Additionally, for the same reasons both sides identified fee entitlement as a contested issue of law to be decided post-verdict on the existing record, AWC's claim that TMG's request for fees is procedurally improper is likewise false. The district court recognized that TMG properly preserved this issue, and AWC's procedural argument recasts TMG's appeal as seeking a ruling on appeal that AWC breached the agreement when the judgment below against AWC on its Article 7 breach claim supplies that finding. The United States Supreme Court has long recognized that "The ordinary rule in respect to a judgment without any special findings is that it, like a general verdict of a jury, is *tantamount to a finding in favor of the successful party of all the <u>facts necessary to sustain the judgment</u>.*"[11] Accordingly, because this Court has always recognized a "determination that a party

---

[11] *Fayerweather v. Ritch*, 195 U.S. 276, 302 (1904) (emphasis added).

has breached a contract is a *question of <u>fact</u>*,"[12] the judgment below "is tantamount to a finding" of the necessary factual predicate for defeating AWC's Article 7 claim: AWC, not TMG, breached that provision. When AWC brought its claim under Article 7, there were only two (2) possible outcomes: either TMG breached Article 7, in which case AWC would prevail, or AWC breached article 7, in which case TMG would prevail.

For the reasons herein, and for those set forth in TMG's Original Brief, this Court should reverse the district court's order denying TMG's Motion for Attorneys' Fees and remand for a determination of the quantum of TMG's recoverable fees under Article 15(e) of the JVA.

## LAW & ARGUMENT

**I.    *De Novo* Review Governs the Legal Question Underlying the Denial.**

AWC presses abuse of discretion as the controlling standard, but that standard does not displace *de novo* review of the contractual-interpretation question on which the district court rested.[13] As TMG's Original Brief explained at length, this Court reviews "conclusions of law underlying [a fee] award . . . de novo."[14] The district court denied TMG's motion on the basis of a single legal proposition—that Article

---

[12] *Gulf Coast Workforce, L.L.C. v. Zurich Am. Ins. Co. of Illinois*, 729 F. App'x 322, 324 (5th Cir. 2018) (emphasis added) (internal citation omitted).
[13] AWC's Br. at 13.
[14] *See* TMG's Br. at 8 (quoting *Energy Management Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006)).

15(e) requires a separately pleaded and adjudicated breach counterclaim. That is a contractual-interpretation question, reviewed without deference.

AWC does not engage TMG's *de novo* authorities. Its brief does not even cite *Energy Management*, *Dresser-Rand*, or *Strand Theatre*. Nor does AWC identify any factual finding—as opposed to a legal conclusion—that drove the ruling below. AWC's silence is the point: when an appellate question turns on legal or contractual interpretation, abuse of discretion does not apply to the interpretations below.

In any event, even under the more deferential standard AWC presses, reversal is still required. *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980), holds that, "[w]here attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees that it has when applying a statute allowing for a discretionary award," and *McDonald's Corp. v. Watson*, 69 F.3d 36, 46–47 (5th Cir. 1995), makes clear that a district court abuses its discretion when it "fails to award such fees in a situation where inequity will not result." The district court's denial of fees to the prevailing party on the very claim AWC twice lost—while awarding AWC $517,717.95 under the identical provision—cannot be consistent with *Cable Marine* and *McDonald's*.

## II.   AWC Mischaracterizes TMG's Position and the Record.

AWC's brief opens, and closes, with three (3) mischaracterizations: (a) of TMG's argument in this appeal, (b) of TMG's prior filings in the court below, and

(c) of this Court's prior decision in this matter. Each falls apart on inspection.

### A. AWC's "unilateral fee-shifting" concern is answered by Article 15(c)'s mandatory seven-day cure window.

AWC repeatedly insists that TMG's reading of Article 15(e) "would permit either party to unilaterally trigger fee shifting simply by issuing a notice of default,"[15] an "absurd result the parties plainly did not intend."[16] Yet, a cursory review of TMG's Original Brief exposes this argument as a classic straw man fallacy. TMG does not argue that a purely unilateral declaration of default warrants fees—indeed, were that so, TMG would not have waited until after defeating AWC's claim to move for fees.

TMG's actual position is hardly complicated, but far clearer than the straw man AWC attacks. Fees are owed under Article 15 of the JVA when a party properly placed in default, who fails to cure that default, causes the other party to incur fees to "defend" an action arising out of that default. TMG's basis for fees explicitly relies on the adjudication of a breach claim *against* AWC as the ultimate basis necessitating the fee award, yet AWC nevertheless attempts to recast TMG's argument while refusing to engage with the true substance of TMG's Original Brief.

Further, Article 15(c) of the JVA offers a cure window as a contractual safeguard against AWC's hypothetical—a counterparty who disagrees with the

---

[15] AWC's Br. at 2-3.
[16] AWC's Br. at 3.

8

notice can cure and avoid fee exposure, or it can double down and litigate, and risk fees if it loses after forcing the other party to "defend" the action. AWC took the second path and lost; that is not TMG's unilateral fiat–that is the contract.

**B.     The "predicate determination" quotation was a prematurity argument, not a concession.**

AWC's entire "gotcha" rests on a single sentence pulled from TMG's Opposition to AWC's Motion for Partial Summary Judgment: "Without a predicate determination of a party's default, such liability cannot be imposed."[17] AWC reads that sentence as if TMG had argued that Article 15(e) requires a separately pleaded and tried affirmative claim for breach. The sentence does not say that, and the heading directly above it forecloses AWC's reading.

The sentence appears in Section VI of TMG's quoted filing, titled: "*AWC's request that this Court determine the availability of attorneys' fees is premature.*"[18] TMG's point was timing, not substance. At the moment that section was written, the parties were briefing summary judgment on the very capital-contribution claim whose resolution would establish who was the Defaulting Party as to Article 7. While AWC's claim remained pending, the predicate question—whose conduct breached Article 7 of the JVA—was still being litigated, and AWC could not insist on its own fees in advance of the answer. That is exactly what TMG argued in the

---

[17] AWC's Br. at 1 (quoting ROA.2948–2949).
[18] ROA.2948 (emphasis added).

very next sentence: "[E]ven if [AWC] somehow succeeds on its remaining claims, TMG cannot be in default, because it is the requirement to make additional capital contributions that is being tried."[19] As TMG's quoted pleading explains, in denying portions of AWC's request for summary judgment, the district court had already found that AWC improperly treated its advance of funds as loans in violation of the JVA, holding that "no Article 7(e) loans ever came into existence because TMG was never in default."[20]

Nothing in the quoted passage committed TMG to AWC's separately-pleaded-counterclaim theory, AWC's reliance on it is the textbook "apples to oranges" out-of-context quotation.

### C.    AWC misquotes this Court's prior opinion.

Brazenly, AWC attempts to rely on a mischaracterization of this very Court's March 26, 2026 decision in an earlier appeal in this matter to prop up its opposition to TMG's instant appeal. AWC asserts that, in affirming the fee award in its fact, this Court "*emphasiz[ed]* [that] the district court had expressly found a breach by TMG."[21] That is not what the opinion says.[22] Nowhere in the three-sentence portion of the Court's discussion and holding on the fee award did the Opinion justify

---

[19] ROA.2948.
[20] ROA.2948 (quoting ROA.2358 (Order and Reasons, p. 38)).
[21] AWC's Br. at 8 (emphasis added).
[22] *See Archer W. Contractors, L.L.C. v. McDonnel Grp., L.L.C.*, Nos. 25-30321 & 25-30479, 2026 WL 839113, at *4 (5th Cir. Mar. 26, 2026).

affirming the award on an explicit finding of TMG's breach on AWC's affirmative claim. This Court's March 2026 decision in the first appeal is not authority for AWC's separately-pleaded-counterclaim theory and cannot bear the weight AWC places on it.

### III. The Plain Text of Article 15(e) Entitles TMG to Fees for Defending AWC's Capital-Contribution Action.

AWC frames this dispute as one of "straightforward contract interpretation."[23] While TMG agrees, it does not follow that AWC interprets the Parties' agreement in a straightforward manner. AWC reads the "defend any action" clause of Article 15(e) as a redundant restatement of the indemnity sentence that precedes it—a reading that drains the clause of independent meaning. Article 15(e) reads, in full:

> Any Defaulting Party hereunder shall indemnify and hold harmless the Non-Defaulting Party for any loss, claims or liabilities which the Non-Defaulting Party may incur arising out of any breach of this Joint Venture Agreement by the Defaulting Party. The Defaulting Party *further agrees* to pay *all legal expenses* required of or by the Non-Defaulting Party to protect their interests *or defend any action arising out of the Defaulting Party's breach*, including court costs and disbursements and fees on a solicitor and his own client basis.[24]

The *second* sentence is a free-standing, fee-shifting promise—something more than the first sentence, to which the parties "further agree[]"—running in favor of the Non-Defaulting Party for fees "required of or by" it "to protect their interests or

---

[23] AWC's Br. at 2.
[24] ROA.5011 (emphasis added).

***defend** any action arising out of the Defaulting Party's breach*."[25] That second sentence is the one TMG invoked below, and the one AWC does not meaningfully address. The true "absurd consequence" threatened in this matter is not the reversal TMG properly seeks in this appeal, but affirming the erroneous interpretation of law and contract below.

On AWC's reading, the JVA would permit a party to file dozens of meritless breach claims, clog the judiciary, and force its joint venturer to incur millions in needless fees—yet deny that joint venturer any recovery of those fees no matter how many of the meritless claims it defeats, and regardless of whether those defensive victories were necessarily predicated on the suing party's own breach. Full recovery would attach only if, instead of merely defending the specious claims, the opposing party had filed a counterclaim for declaratory judgment that the suing party's breach claims were themselves a breach of the agreement. *That* is an absurd consequence precluded by the plain language of Article 15(e). Article 15(e) contains no "third-party" limitation, just as it contains no requirement for an "affirmative claim" for breach. "***Any*** action" means any action—including the suit AWC itself filed against TMG. Indeed, AWC's claim that the second sentence of Article 15(e) "naturally covers situations where the Non-Defaulting party must defend actions brought by

---

[25] *Id.*

*third parties*"[26] runs headfirst into the fact that AWC argued the *opposite* below. In seeking its own fees, AWC quoted the second sentence of Article 15(e) in explaining that that its fees "are 'legal expenses required of or by the Non-Defaulting Party [AWC] to protect their interests.'"[27]

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. Here, that intent is reflected in two (2) distinct sentences in Article 15(e) with distinct meanings. Under the latter, the Defaulting Party "*further*" agrees to pay the Non-Defaulting Party's legal expenses to "defend any action arising out of the Defaulting Party's breach." Because contractual words "must be given their generally prevailing meaning," La. Civ. Code art. 2047, "defend any action" includes resisting AWC's claim, not first prosecuting a separate counterclaim. Because each provision must be read both to render it effective, La. Civ. Code art. 2049, and "in light of the other provisions so that each is given the meaning suggested by the contract as a whole," La. Civ. Code art. 2050, Article 15(e) must be read with Article 15(c)'s notice-and-cure mechanism—not rewritten so that "protect" and "defend" collapse into the preceding indemnity sentence or become a one-way fee provision for AWC alone.

---

[26] AWC's Br. at 22 (emphasis added).
[27] ROA.2611 (AWC's Memorandum in Support of Motion for Partial Summary Judgment, p. 24).

AWC's "default is not breach" argument fares no better.[28] AWC repeatedly cites the Louisiana Civil Code's "putting in default" regime—Articles 1990 and 1991—and the Louisiana Civil Law Treatise's discussion of the "*mise en demeure*"[29] for the proposition that "default is a legal status; breach is a claim requiring adjudication."[30] That confuses the <u>noun</u> "default" (a status into which an obligor is "put" under the Civil Code) with the <u>verb</u> "default," which is what Article 15(c) of the JVA uses. Article 15(c) reads: "If any party hereto . . . shall default in any of its obligations under this Agreement."[31] Black's Law Dictionary defines the *verb* "default" as "to fail to perform a contractual obligation,"[32] and defines "breach of contract" as the "violation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance."[33] One "defaults" by "failing to perform;" one "breaches" by "failing to perform." While there may be instances in which these terms warrant distinct treatment, under the JVA's plain language, the verbs are substantively identical. AWC's effort to graft the Civil Code's noun-based "*mise en demeure*" analysis onto the JVA's verb-based "shall default" language is a category error.

---

[28] AWC's Br. at 15.
[29] AWC's Br. at 17 (citing 6 La. Civ. L. Treatise, Law of Obligations § 1.2 (2d ed.)).
[30] AWC's Br. at 17.
[31] ROA.5010 (JVA, Article 15(c)) (emphasis added).
[32] *Default*, Black's Law Dictionary (8th ed. 2004).
[33] *Breach*, Black's Law Dictionary (8th ed. 2004).

14

AWC's own brief treats the two (2) verb forms as alternatives. It repeatedly insists that Article 15(e) "requires that a party be found in *default or breach*."[34] "Default or breach" treats the two (2) verb forms as alternative ways of describing the same conduct—precisely TMG's reading. AWC cannot have it both ways.

## IV.   The Rulings Below Necessarily Adjudicate AWC's Breach of the JVA.

Even on AWC's preferred framing—that Article 15(e) requires a judicial determination of AWC's breach—the rulings below supply one. The district court's partial summary judgment ruling in TMG's favor and the jury's verdict together necessarily decide that AWC's capital-contribution demands, and the suit it filed to enforce them, breached the JVA.

This is well-established under the Supreme Court's longstanding principles of interpreting judgments. "The ordinary rule in respect to a judgment without any special findings is that it, like a general verdict of a jury, is *tantamount to a finding in favor of the successful party of all the facts necessary to sustain the judgment*."[35] Thus, because the "determination that a party has breach a contract is a *question of fact*,"[36] it necessarily follows that the judgment below necessarily encompasses that the factual finding that *AWC* breached Article 7 by demanding contributions when

---

[34] AWC's Br. at 29 (emphasis added); see also AWC's Br. at 16-18.
[35] *Fayerweather v. Ritch*, 195 U.S. 276, 302 (1904) (emphasis added).
[36] *Gulf Coast Workforce, L.L.C. v. Zurich Am. Ins. Co. of Illinois*, 729 F. App'x 322, 324 (5th Cir. 2018) (emphasis added) (internal citation omitted).

they were not due under the JVA—TMG could prevail no other way.

Article 7(a) of the JVA requires the Executive Committee to approve capital-contribution determinations by unanimous vote. Absent such approval, the determinations are not binding on the parties. Article 7(e) provides that advances become Article 7(e) demand loans only if a party fails to contribute a required capital contribution, which in turned required unanimous consent of the Parties. The district court squarely held that AWC's working-capital determinations had not received Executive Committee approval, and that "AWC's determinations themselves are not binding upon TMG given the lack of unanimous Executive Committee approval." The jury then resolved every remaining capital-contribution theory in TMG's favor.

Those rulings necessarily mean that AWC's capital demands, its treatment of its own funds as Article 7(e) "demand loans" attributable to TMG, and its breach claim premised on TMG's refusal to fund those demands, all violated the JVA. Because TMG refused to pay the improperly demanded capital contributions, had TMG sought declaratory judgment that AWC's capital-contribution demands breached the JVA instead of "defend[ing]" AWC's mirror-image breach claim, the result would have been identical.

## V.    AWC's Procedural Arguments Are Meritless.

AWC raises two (2) procedural arguments—that TMG's fee request was an impermissible "collateral matter" used to litigate a new substantive breach claim,

and that TMG was required to plead its breach theory as a compulsory counterclaim under Federal Rule of Civil Procedure 13(a).[37] Both arguments fail.

First, these procedural arguments were waived at the pretrial conference. The Parties' pretrial order (ROA.3337) identifies attorneys' fees as a contested issue of *law* to be decided post-verdict on the existing record. AWC followed that very path itself when it sought its own Article 15(e) fees after prevailing on its separate breach claim. Having taken the same procedural path TMG took—and having recovered $517,717.95 on that basis—AWC cannot now insist that the path is procedurally improper. Second, TMG does not seek a distinct ruling on appeal that AWC breached the agreement. Rather, it seeks a straightforward application of the Supreme Court's holding in *Fayerweather*, and this Court's holding in *Gulf Coast Workforce*, to the rulings below.

## VI.    AWC's "TMG Is Itself a Defaulting Party" Argument Cannot Defeat TMG's Fee Claim.

AWC argues, in passing, that TMG can never be a "Non-Defaulting Party" under Article 15(e) because of the affirmed $2.7 million settlement-funds ruling.[38] That argument cannot defeat TMG's claim, for three (3) reasons.

---

[37] AWC Br. at 23-28 (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir. 1994); *N. Cypress Med. Ctr. Op. Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015)).
[38] AWC's Br. at 18-19.

First, AWC cites no legal authority for its assertion, nor does it engage in any application of contractual interpretation principles for its conclusion. Second, the $2.7 million ruling pertained to a *separate* claim. Third, "Defaulting Party" status under Article 15 is necessarily claim-specific. Finally, AWC's position is non-falsifiable: AWC claims "Non-Defaulting Party" status on the settlement-funds dispute while insisting TMG can never be the "Non-Defaulting Party" on the capital-contribution dispute, which can only be true if "Defaulting Party" status is claim-specific. The provision must be read consistently across the same case: each party is the Non-Defaulting Party for the claims it defended and won.

## CONCLUSION

For the foregoing reasons, and for those set forth in The McDonnel Group, LLC's Original Brief, Defendant-Appellant, The McDonnel Group, LLC, respectfully requests that this Honorable Court reverse the district court's order denying its Motion for Attorneys' Fees and remand the matter for a determination of the quantum of an award to TMG of recoverable attorneys' fees under the Parties' Joint Venture Agreement, consistent with Louisiana law.

**Dated: June 10, 2026**                  **Respectfully submitted:**

*/s/ Randall A. Smith*
**RANDALL A. SMITH (No. 2117)**
**DYLAN T. LEACH (No. 35879)**
**ANDRE M. STOLIER (No. 40063)**
Of
**SMITH & FAWER, LLC**
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

***Counsel for Defendant-Appellant,***
***The McDonnel Group, LLC***

Case: 25-30739    Document: 37    Page: 23    Date Filed: 06/10/2026

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, <u>AND TYPE-STYLE REQUIREMENTS</u>**

I HEREBY CERTIFY that this reply brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(ii), because it contains 4238 words, excluding the parts of the filing exempted by FED. R. APP. P. 32(f). This reply brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6), because this reply brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 10, 2026

*/s/ Randall A. Smith*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2026, Defendant-Appellant, The McDonnel Group, LLC, caused the foregoing Reply Brief of Defendant-Appellant, The McDonnel Group, LLC, to be served on the following counsel of record for Plaintiff-Appellee, Archer Western Contractors, LLC, by electronically filing the same with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system, or by first class mail:

By CM/ECF:

DANIEL S. LUND III (No. 19014)
JEREMY T. GRABILL (No. 34924)
PATRICK M. JUDD (No. 40415)
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

By First Class Mail:

CARTER B. REID
  *Admitted Pro Hac Vice*
DOMINICK P. WEINKAM
  *Admitted Pro Hac Vice*
HENRY O. TAYLOR, IV
  *Admitted Pro Hac Vice*
WATT, TIEDER, HOFFAR &
FITZGERALD, LLP
1765 Greensboro Station Place,
Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000

Dated: June 10, 2026

/s/ Randall A. Smith
*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*